POWERS, J.
*38 *728 In this property dispute between two neighbors, plaintiffs appeal from a general judgment arguing, among other things, that the trial court erred in granting summary judgment to defendants on plaintiffs' claim for adverse possession and denying plaintiffs' cross-motion for summary judgment on the same claim. Plaintiffs further assert that the trial court erred in awarding defendants an enhanced prevailing party fee, and that the trial court erred in awarding attorney fees to defendants in a supplemental judgment. We conclude that, viewing the evidence in the light most favorable to plaintiffs, plaintiffs failed to produce evidence of hostility for purposes of adverse possession and, as such, the trial court did not err in granting summary judgment to defendants on plaintiffs' claim for adverse possession. We further conclude that the trial court erred in awarding defendants $2,500 as an enhanced prevailing party fee without providing a sufficient explanation of the basis for its decision, and that the trial court erred in considering the factors listed in ORS 20.075 when it made its determination on whether to award attorney fees under ORS 20.105(1). Thus, we vacate and remand the enhanced prevailing party fee and the award of attorney fees, and otherwise affirm the judgments.
In an appeal arising from cross-motions for summary judgment, the granting of one motion and the denial of the other are both reviewable. Eden Gate, Inc. v. D&L Excavating & Trucking, Inc. , 178 Or. App. 610, 622, 37 P.3d 233 (2002). Where, as here, plaintiffs assign error to both the granting of defendants' motion and the denial of plaintiffs' motion, we review each motion to determine "whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law." Vision Realty, Inc. v. Kohler , 214 Or. App. 220, 222, 164 P.3d 330 (2007). There is no genuine issue of material fact if, based on the record, "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C. "In determining whether a genuine factual dispute exists, we review the record in the light most favorable to the nonmoving party" and draw all reasonable inferences in *729 the nonmoving party's favor. Whalen v. American Medical Response Northwest , 256 Or. App. 278, 280, 300 P.3d 247 (2013). We state the facts below in a manner consistent with those standards.
The parties own adjoining tracts of land in Clackamas County that were once part of a single parcel of land owned by the Carsons. The property in dispute is a strip of land-a driveway approximately 18.5 feet wide-that has fences running parallel on either side. The fence to the east of the driveway, the disputed fence, was built by the Carsons before either of the parties in this case acquired their respective properties. The properties are configured as follows:
*39 In 1963, the Carsons partitioned their property, selling one tract to plaintiff Donald Morris, while retaining the other tract. Morris later granted an undivided one-half interest in his tract to his daughter, plaintiff Lisa Snider (hereinafter collectively referred to as plaintiffs). According to plaintiffs' deeds-both the 1963 deed and the later deed that granted Snider an interest in the property-the eastern *730 boundary of their property did not align with the disputed fence line, nor did it align with the parallel fence line; rather, the boundary fell within the strip of land between the two fences.
In 1965, the Carsons sold their remaining tract to the Husemans, who in 1997 sold it to defendants, Timothy Kanne and Susan Lind. According to defendants' deed, the western boundary did not align with either fence line; rather, the boundary aligned with the eastern boundary of plaintiffs' tract and fell within the strip of land between the two fences.
In 1983, the Husemans asked Morris to replace the disputed fence. At that time, Morris suggested that a survey be done to verify the true boundary location because he believed that neither property had been surveyed officially. The survey, however, was not completed, and the Husemans erected a new fence in the same location.
In 2011, Morris fenced over the gates in the disputed fence and electrified that portion of the fence. Before 2011, the gates remained unlocked, and defendants and their predecessors occasionally used the gates to access the adjoining property. The parties disputed the extent and frequency of that use; however, the parties agreed that access was available and that both parties engaged in uses of the disputed strip without interference from the other on occasion. The parties further agreed that there is a separate driveway that served as defendants' primary access route to their property.
In 2013, plaintiffs obtained a survey of their property, which revealed that the boundary line fell between their property and defendants' property, roughly in the middle of the narrow strip between the two fences. Defendants also got a survey of the tract, which revealed that the boundary line was in the same location as plaintiffs' survey. Plaintiffs then initiated this action that sought title of the entire disputed driveway to the east fence.
Plaintiffs' complaint asserted five legal theories, the focus of which was to lay claim to title over the disputed *731 driveway: (1) boundary by agreement; (2) boundary by acquiescence; (3) adverse possession; (4) trespass *40 to land; and (5) trespass to chattels. Defendants responded by asserting a number of counterclaims asserting their right over the disputed driveway. On cross-motions for summary judgment, the trial court disposed of plaintiffs' first three claims, claims (1) to (3) above, by granting defendants' summary judgment motion and denying plaintiffs' cross-summary judgment motion on the same basis, and that ruling rendered claims (4) and (5) moot.
In granting defendants' summary judgment motion on plaintiffs' claim for adverse possession, the trial court focused on the element of hostility. "Based on the evidence in the record," the trial court concluded, "no reasonable juror could find that [plaintiffs] established an intent to appropriate the disputed land to themselves, to the exclusion of all others, at any time prior to 2011, even in the light most favorable to [plaintiffs]." The trial court explained that the evidence submitted by plaintiffs was that "there was never any conflict between the neighboring property owners about the disputed fence or the strip of land to the west of it, until 2011 when [plaintiffs] fenced over the gates and electrified that section of fencing."
The parties then proceeded to trial, after which the court, among other things, allowed defendants' claim for attorney fees and an enhanced prevailing party fee on the ground that plaintiffs' claims were objectively unreasonable. Plaintiffs now appeal.
On appeal, plaintiffs raise six assignments of error. We write to discuss only three: the trial court's grant of summary judgment to defendants on plaintiffs' adverse possession claim; the trial court's award of an enhanced prevailing party fee to defendants; and the trial court's award of attorney fees to defendants. We reject plaintiffs' remaining assignments of error without written discussion.
To prevail on a claim of adverse possession at common law, claimants must "prove by clear and convincing evidence that they, or they and their predecessors in interest, maintained actual, open, notorious, exclusive, hostile, and *732 continuous possession of the property for a ten-year period."[1] Stiles v. Godsey , 233 Or. App. 119, 124, 225 P.3d 81 (2009).
On appeal, plaintiffs argue that the trial court erred in concluding that there was insufficient evidence of hostility. The element of hostility-whether the use is hostile to the interests of the owner-can be established in one of two ways. One way that a claimant can establish hostility is if the claimant can demonstrate that he or she subjectively intended to possess the property as the owner, not in subordination to the true owner. Hoffman v. Freeman Land and Timber, LLC. , 329 Or. 554, 561, 994 P.2d 106 (1999) ; see Sertic v. Roberts , 171 Or. 121, 134, 136 P.2d 248 (1943) ("Adverse possession depends upon the intent of the occupant to claim and hold real property in opposition to all the world."). Another way that a claimant can establish hostility is by relying on the "pure mistake" doctrine, which does not require an inquiry into the claimant's subjective intent to possess the property as the true owner. Faulconer v. Williams , 327 Or. 381, 389, 964 P.2d 246 (1998). To the extent that plaintiffs' hostility argument on appeal relies on the "pure mistake" doctrine, it does not provide a basis to reverse the trial court's ruling, because that argument was not raised during the summary judgment proceedings. See State v. Wolfgang , 278 Or. App. 781, 786, 379 P.3d 759, rev. den. , 360 Or. 465, 384 P.3d 157 (2016) ("Arguments on appeal will be deemed unpreserved if they present discrete legal theories that could, and should, have been raised below." (Internal quotation marks and citation omitted.) ); see also *41 Fisher v. Angelozzi , 285 Or. App. 541, 550, 398 P.3d 367 (2017) (concluding that we will not consider an alternative basis for affirmance "if the losing party might have created a different record below had *733 the prevailing party raised that issue, and that record could affect the disposition of the issue" (emphasis and citation omitted) ). To the extent that plaintiffs reprise their contention that they subjectively intended to possess the property as the true owner, the material facts are undisputed, leaving a question of law as to how to construe those facts. We conclude that those facts do not show hostility for purposes of adverse possession.
According to plaintiffs, the eastern fence was treated as a boundary line since Morris purchased their property. Plaintiffs asserted that, until the survey was completed, defendants "never raised any issues * * * about the location of the boundary" and that the fence always was treated as the true boundary. Plaintiffs acknowledged that two unlocked gates existed in the disputed fence, but asserted that "it is exceedingly rare that they have been used" and that defendants never used them without their knowledge. Plaintiffs further asserted that defendants and their predecessors primarily used a different driveway to access their property and that the gates in the disputed fence were used only on rare occasions to allow interaction and cooperation with their various neighbors residing on the adjoining property. Plaintiffs contended that they regularly have occupied, maintained, and used the disputed property and that defendants never attempted to occupy or possess the disputed strip of property until plaintiffs commenced this action.
Even viewed in the light most favorable to plaintiffs, the evidence in the record falls short of creating a genuine issue of material fact that plaintiffs' use of the disputed property is hostile to the interests of defendants. Plaintiffs' maintenance and use of the disputed strip of land does not suggest hostility because plaintiffs' use was not inherently inconsistent with defendants' rights as the true owner. Nothing about plaintiffs' use of the disputed property would suggest to a true owner that plaintiffs were attempting to indicate a claim of right to their property. The evidence concerning the construction and replacement of the fence is not, in and of itself, sufficient to create an issue of fact concerning hostility. This is not a case where the existence of a fence purports to communicate an intent to appropriate land. Although construction of a fence can suffice to indicate *734 hostility, see Slak v. Porter , 128 Or. App. 274, 280-81, 875 P.2d 515 (1994), it is undisputed that the fence's original construction predated the parties' ownership of their respective parcels. Plaintiffs' mere use and occasional maintenance of the gravel on the disputed property is not significant enough to convey to defendants that plaintiffs subjectively intended to possess the property as the true owner. Additionally, plaintiffs' assertions that defendants never affirmatively attempted to occupy the disputed property or never raised any issues about plaintiffs' use of the disputed property are misguided, as it is plaintiffs' burden to establish ownership.
Thus, even assuming that the other elements of adverse possession were met, plaintiffs did not present evidence such that an objectively reasonable juror could find that plaintiffs intended to claim the strip of land against defendants' interests as the true owners for the requisite 10-year period. Plaintiffs' conduct and use of the strip was not significant enough to constitute evidence that plaintiffs used the land intending to be its true owner and not in subordination to the true owner. Therefore, plaintiffs failed to offer evidence that their use was hostile, and their claim for adverse possession must fail. The trial court did not err in granting summary judgment to defendants on plaintiffs' claim for adverse possession or in denying plaintiffs' cross-motion for summary judgment on the same claim.
Next, plaintiffs assign error to the trial court's award of an enhanced prevailing party fee to defendants in the amount of $2,500. Plaintiffs argue that the enhanced prevailing party fee was legal error, because the court did not properly consider the factors laid out in ORS 20.190(3).[2] According to *42 plaintiffs, the explanation given in the trial *735 court's letter opinion for the enhanced prevailing party fee is insufficient.
Because ORS 20.190(3) provides that the court may award an enhanced prevailing party fee, we review the ultimate decision whether to award an enhanced prevailing party fee for an abuse of discretion. Shumake v. Foshee , 197 Or. App. 255, 260-61, 105 P.3d 919 (2005). That decision, however, depends on the court's evaluation of the ORS 20.190(3) factors, some of which involve findings of fact-which will be reviewed for any evidence-and some of which involve legal determinations-which will be reviewed for legal error. Id. at 261, 105 P.3d 919.
"[F]indings regarding fees need not be complex or lengthy and may be made in any terms clear enough to permit meaningful review. Brief descriptions of, or citation to, the factor or factors involved would be sufficient." Wright v. Jones , 155 Or. App. 249, 253, 964 P.2d 1048 (1998) (internal citation omitted). On the other hand, findings that are too conclusory preclude our ability to conduct meaningful review. For example, in Seida v. West Linn-Wilsonville School District 3 J T , 169 Or. App. 418, 429, 9 P.3d 150 (2000), we vacated and remanded the enhanced prevailing party fee because the trial court's findings were too conclusory. In that case, the trial court found that
"(1) plaintiff's claim lacked objective reasonableness, (2) an award of the larger prevailing party fee would not deter others from asserting good faith claims in similar cases and (3) an award of the larger prevailing party fee might deter future meritless claims of this sort."
*736 Id . at 428, 9 P.3d 150. Applying the requirements of McCarthy v. Oregon Freeze Dry, Inc. , 327 Or. 84, 957 P.2d 1200, adh'd to as clarified on recons. , 327 Or. 84, 957 P.2d 1200 (1998), we concluded that we were unable to review the court's application of the factors in ORS 20.190(3), because the trial court's findings were "too conclusory; they do not express the court's reasons as to why plaintiff's claims lacked objective reasonableness, or why the court believed that they were not brought in good faith, or why other statutory grounds for the fee were applicable." Seida , 169 Or. App. at 429, 9 P.3d 150.
In this case, the trial court's findings were similarly conclusory. The trial court found,
"[b]ased on the record of the case, and specifically the Motions for Summary Judgment, it is clear that Defendants are the prevailing parties. The court finds that Plaintiffs lacked any objectively reasonable basis to assert their claims on this case. Therefore, the Court finds for Defendants as to their request for enhanced prevailing party fees and awards prevailing party fees in the amount of $2500."
The trial court did not explain why plaintiffs' claims were objectively unreasonable and the court did not cite to any of the other factors listed in ORS 20.190(3) in its explanation for the fee award. Because we are unable to conduct a meaningful review of the court's award, we vacate the enhanced prevailing party fee award and remand to the trial court.
*43 Finally, plaintiffs assign error to the trial court's award of attorney fees to defendants under ORS 20.105, which provides that the court shall award reasonable attorney fees to the prevailing party upon a finding by the court that "there was no objectively reasonable basis for asserting the claim." According to plaintiffs, the attorney fee award was in error because the trial court applied the incorrect legal standard after making a finding that plaintiffs' claims lacked an objectively reasonable basis. "[W]hether a claims lacks an objectively reasonable basis is a legal question, and we review the trial court's ruling on that question for legal error." Williams v. Salem Women's Clinic , 245 Or. App. 476, 482, 263 P.3d 1072 (2011).
After trial, the court issued a letter opinion concluding that
*737 "[b]ased on the record of the case, and specifically the Motions for Summary Judgment, it is clear that Defendants are the prevailing parties. The court finds that Plaintiffs lacked any objectively reasonable basis to assert their claims on this case."
The court then entered a general judgment, which provided defendants the opportunity to file a statement for costs and fees pursuant to ORS 20.105(1).[3] After reviewing defendants' statement for costs and fees and plaintiffs' objections, the court entered a supplemental judgment, along with a letter opinion explaining the reasons for awarding fees. In particular, the court explained, "In determining whether to award attorney fees in this case, the court considered the following statutory factors[.]" (Emphasis added.) The court then discussed the factors listed in ORS 20.075(1) and (2). Although both subsections (1) and (2) could be appropriate when considering the amount of attorney fees when fees shall be awarded, subsection (1) is not appropriate when determining "whether" fees are to be awarded.
ORS 20.105(1) requires a court to award reasonable attorney fees "upon a finding by the court that * * * there was no objectively reasonable basis for asserting the claim." ORS 20.075(1), on the other hand, provides that the "court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." (Emphases added.) Thus, as plaintiffs point out, an attorney fee award under ORS 20.105(1) is a mandatory award upon a finding that a claim lacks an objectively reasonable basis, whereas ORS 20.075(1) is applied only to discretionary awards.
*738 In Williams , we held that the trial court "strayed from the correct analysis" when determining whether the record was entirely devoid of support for the party's claim, as required by ORS 20.105(1), and instead identified ORS 20.075 factors that it took into account when awarding fees. 245 Or. App. at 482, 263 P.3d 1072. We explained that
"[t]he factors listed in the trial court's letter opinions reflect those specified in ORS 20.075, which apply when another source of law gives a court discretion to award attorney fees. ORS 20.075(1). But those factors do not apply to a court's decision whether to award fees when, as here, a party seeks a mandatory attorney fee award under ORS 20.105(1).
"When a trial court has applied an incorrect legal standard in assessing a party's claim, we sometimes remand so the trial court may apply the correct standard in the first instance. When the standard is purely legal, however, in the interest of judicial economy, we often apply the legal standard ourselves instead of remanding."
*44 Williams , 245 Or. App. at 483, 263 P.3d 1072 (emphases in original; internal citations and footnote omitted).
Given our decision to vacate the enhanced prevailing party fee award and remand so that the trial court may consider that award under the factors in ORS 20.190(3), we conclude that the appropriate disposition with regard to attorney fees under ORS 20.105 is to vacate and remand so that the trial court can clarify and apply the correct standard as to whether to award attorney fees. See Williams , 245 Or. App. at 486, 263 P.3d 1072 ("[T]he objective reasonableness factor that a trial court must consider in determining whether [an enhanced prevailing party] fee award is appropriate requires the same analysis as the single issue that matters under ORS 20.105(1) -whether a party had no objectively reasonable basis for asserting the claim." (Internal quotation marks omitted.) )
Award of enhanced prevailing party fee under ORS 20.190(3) and award of attorney fees under ORS 20.105(1) vacated and remanded; otherwise affirmed.

Plaintiffs assert on appeal that their claim vested in 1973 or, alternatively, in 1983. Adverse possession claims vesting before January 1, 1990, are governed by the common law, whereas claims vesting after that date are governed by ORS 105.620. Nooteboom v. Bulson , 153 Or. App. 361, 364 n. 1, 956 P.2d 1042, rev. den. , 327 Or. 431, 966 P.2d 222 (1998). In enacting ORS 105.620, the legislature codified the six common-law elements of adverse possession and "added one more-a person claiming adverse possession must have an honest belief throughout the 10-year period that he or she is the actual owner." Sea River Properties, LLC v. Parks , 355 Or. 831, 855, 333 P.3d 295 (2014). To the extent that plaintiffs argue in the alternative that we should look at any 10-year period during their ownership of the adjacent parcel, they do not make any distinction between their common law claim and any statutory claim.

ORS 20.190(3) provides:
"In addition to the amounts provided for in subsection (2) of this section, in any civil action or proceeding in a circuit court in which recovery of money or damages is sought, the court may award to the prevailing party up to an additional $5,000 as a prevailing party fee. The court shall consider the following factors in making an award under the provisions of this subsection:
"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
"(b) The objective reasonableness of the claims and defenses asserted by the parties.
"(c) The extent to which an award of a larger prevailing party fee in the case would deter others from asserting good faith claims or defenses in similar cases.
"(d) The extent to which an award of a larger prevailing party fee in the case would deter others from asserting meritless claims and defenses.
"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
"(g) Any award of attorney fees made to the prevailing party as part of the judgment.
"(h) Such other factors as the court may consider appropriate under the circumstances of the case."

ORS 20.105(1) provides:
"In any civil action, suit or other proceeding in a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court shall award reasonable attorney fees to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal."