Argued and submitted February 11, affirmed September 9, 2009

**JAMES B. HOUSE LIVING TRUST,**
by and through James B. House Jr.,
and Brenda Strowger, Trustees,
*Plaintiff-Appellant,*

*v.*

Virginia C. THOMPSON
and Jeff R. Thompson,
dba Jeff Thompson Logging,
*Defendants-Respondents.*

Columbia County Circuit Court
052200; A135110

217 P3d 228

Charles E. Corrigan argued the cause and filed the briefs for appellant.

Steven E. Benson argued the cause and filed the briefs for respondents.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

This is a dispute over the ownership of a parcel of timber property located in Columbia County. Plaintiffs contend that they acquired the property by deed. Defendants contest plaintiffs' reading of their deed and contend that it was defendants who actually acquired the property by deed from a common grantor. In the alternative, defendants contend that they acquired the property, if not by deed, then by adverse possession based on their logging of the property in 1967 and 1968. The trial court held that, although plaintiffs acquired deeded title to the property, defendants acquired the property by adverse possession by virtue of their logging activity.

Plaintiffs appeal, arguing that the trial court erred in determining that defendants' single season of logging suffices to establish that they acquired the property by adverse possession. Defendants cross-assign error to the trial court's determination that they had not acquired the property by deed. We agree with defendants on their cross-assignment that the trial court erred in construing plaintiffs' deed to include the disputed parcel, and, because we further conclude that defendants' deed encompasses the disputed parcel, we affirm the trial court's judgment on that ground and do not reach the issue of adverse possession.

The relevant facts are not in dispute. Unfortunately, that does not mean that they are easy to follow. The issues in this case turn on deeds that contain some anomalous wording. So we are required to proceed carefully through a somewhat technical description of the property involved.

We begin with a description of the property. Tax Lot 100 is a 21.25 acre tract of timberland in the northeast corner of Section 15, Township 7 North, Range 4 West, Willamette Meridian, in Columbia County. The parcel is shaped as a somewhat irregular, upside-down right triangle. The right angle of the triangle forms the northeast corner of Section 15. A utility easement of approximately 122 feet in width runs along the north leg of the triangle (the northern boundary of Tax Lot 100 and Section 15), from the northeast corner of Section 15 and Tax Lot 100. The second leg of the triangle is

the east boundary of Tax Lot 100 and Section 15. The southern boundary of Tax Lot 100 (the hypotenuse of the triangle) is a county road known as the "E. J. Lindberg County Road P-56" (Lindberg Road).

Lindberg Road has been in existence since before 1940, but is of unknown origin. As it turns out, a 1913 survey shows a survey line for a road also described as "E. J. Lindberg Road P-56" at a different location from the actual Lindberg Road, running northwest from the southeastern corner of Tax Lot 100 up to and through the Highway 30 right-of-way. But such a road was never built. The dispute in this case turns on the fact that deeds to the property at issue refer to Lindberg Road as a boundary; the question is whether the deeds refer to the Lindberg Road that actually exists or the road that is referred to in the 1913 survey but was never built. Plaintiffs, who own property to the south of the disputed parcel, contend that they were deeded the land up to the 1913 survey line; defendants, on the other hand, who own property to the north of the disputed parcel, contend that they were deeded the land down to the Lindberg Road that has existed since at least the 1940s.

With that in mind, we turn to the deeds themselves. At one point, all of the land in the area, including all of what is known as Tax Lot 100, was held by Michael and Mathilda Doran. In 1940, the Dorans conveyed a utility easement to the United States government along the northern 122 feet of

Tax Lot 100. The easement was expressly made "subject to the rights of the public in and to Lindberg County Road, County Road No. P-56."

In 1944, the Dorans deeded part of their property to plaintiff James House's parents, J. B. and Lucy House (who, in 1982, deeded the property to plaintiff James House). The deed from the Dorans describes the property as "[a]ll that portion of the Northwest quarter of Section 15 * * * lying South and West of Lindberg County Road No. P-56." The deed excepted from that description a rock quarry owned by the county. The problem is that the rock quarry was located to the *north* of Lindberg Road. Property to the north of Lindberg Road was not the property being transferred, at least if the reference in the deed to "Lindberg County Road No. P-56" is taken to refer to the only Lindberg Road that existed at that time.

In 1947, the Dorans conveyed to their son John Doran "[a]ll that portion of the Northeast Quarter of Section Fifteen * * * lying North of the County Road known as E. J. Lindberg Road." In 1958, John and Jennie Doran conveyed to Erling and Agnes Ericksen that portion of Section 15 "lying Northerly of the County road known as E. J. Lindberg Road as it existed in March, 1944[.]" The deed to the Ericksens also included an exception for the rock quarry. That same description was carried forward to the deeds of defendants' two immediate predecessors, and defendants acquired their interest in August 1967.

So, to summarize, we have, on the one hand, a 1944 deed to plaintiffs' predecessors for land *south* of "Lindberg County Road No. P-56," and, on the other hand, a 1947 deed to defendants' predecessors for land *north* of "the County road known as E. J. Lindberg Road." Obviously, we need to determine what the deeds mean when they refer to Lindberg Road.

Plaintiffs contend that the reference in the 1944 deed from which they claim title to "Lindberg County Road No. P-56" must mean not the actual Lindberg Road, but the road that was planned back in 1913 but never actually built, as shown on the 1913 survey. They acknowledge that no such

road actually existed at the time of the 1944 deed. But, they insist, that is the only way to make sense of the deed's exception of the county's rock quarry. To read the deed to refer only to the actual Lindberg Road means that the deed was mistaken in excepting the rock quarry.

Defendants contend that the references in all of the deeds to Lindberg Road reasonably can be taken to refer only to the county road that actually existed at the time. The fact is, defendants note, there was no other Lindberg Road at the time of the deeds in question. What plaintiffs describe as the real "Lindberg Road" for the purposes of their deed, defendants insist, actually was nothing more than a *proposed* road on a survey from 31 years earlier, a road that was never built and never certified as an actual county road. As for the rock quarry, defendants contend that the deed's exception of that site is simply mistaken, one of several mistakes in the deed, defendants note. (Defendants note that, among other things, the 1944 deed also mistakenly described part of the property as being in the wrong Range, necessitating the later issuance of a correction deed.) Any other reading of the deeds, defendants contend, requires the words "Lindberg County Road No. P-56" to mean something that simply is not true, namely, that the words refer to a county road that never existed.

■■ In interpreting a deed, our objective is to ascertain the meaning that most likely was intended by the parties who entered into it. ORS 42.240 ("In the construction of an instrument the intention of the parties is to be pursued if possible[.]"); *see Tipperman v. Tsiatsos*, 327 Or 539, 544-45, 964 P2d 1015 (1998) (construing deed); *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (construing a contract). We look first to the wording of the deed itself, considering its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law. *Yogman*, 325 Or at 361.

■■ In determining whether a term in a deed is ambiguous, the court can consider evidence of the circumstances surrounding its execution. *See* ORS 42.220; ORS 41.740; *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994); *Batzer Construction, Inc. v. Boyer*, 204 Or App 309,

129 P3d 773 (2006); *see also Doyle v. Gilbert*, 255 Or 563, 566, 469 P2d 624 (1970); *Tipperman*, 327 Or at 545 (extrinsic evidence that may be considered in construing an easement includes "the purpose and nature of the easement, the circumstances existing at the time of the grant or reservation, and the manner in which the easement was used by the original parties"). A provision is ambiguous only if it is capable of more than one plausible and reasonable interpretation. *Batzer Construction, Inc.*, 204 Or App at 313. If the court determines that the document's provisions are ambiguous, the court may then examine extrinsic evidence with the goal of resolving the ambiguity. *Tipperman*, 327 Or at 544-45; *Yogman*, 325 Or at 363-64. If an ambiguity nonetheless remains, the court may resolve the contract's meaning by turning to applicable maxims of construction. *Id.* at 364-65.

■ In our view, defendants have the better of the argument. The 1944 deed refers to the property conveyed as the property "lying South and West of Lindberg County Road No. P-56." At that time, there was only one such county road in Columbia County. What plaintiffs contend the deed referred to was simply not a road, certainly not a county road known as "Lindberg County Road No. P-56." What plaintiffs contend the deed referred to was, as defendants correctly note, a *proposed* road that was never actually built. It was, as of 1944, a survey line from a survey that had been conducted 31 years earlier. If the parties to the 1944 deed had intended to refer to the survey line, it strikes us as simple enough to refer to that survey line as such in describing the property that is being transferred. The parties to the 1944 deed did not do so. They referred to "Lindberg County Road No. P-56." To read the deed any other way would require us to construe the description to mean something other than what it plainly says, namely, that it refers to something other than the actual Lindberg County Road and, instead, to a proposed road that was never built.

To be sure, plaintiffs have a point in noting that the foregoing reading of the 1944 deed renders the rock quarry exception anomalous. We decline, however, to view what amounts to a redundancy in the 1944 deed—excepting the rock quarry that was not part of the conveyance in the first place—to drive us to a conclusion that the deed's reference to

Lindberg Road means something other than what it unambiguously says.

Even assuming for the sake of argument that the 1944 deed is ambiguous, we would reach the same conclusion.

First, as we have noted, reading the rock quarry exception as anything other than mistaken would require us to read the deed's reference to Lindberg Road to refer to a road that never has existed. That strikes us as highly unlikely.

Second, as defendants note, the rock quarry exception was not the only mistake in the deed.

Third, and perhaps most important, in prior transactions, the Dorans themselves unambiguously referred to Lindberg Road as the actual road and not the one suggested on the 1913 survey. Recall that, in 1940, the Dorans—the same individuals who were the grantors in the 1944 deed—conveyed a utility easement to the federal government. The description of the easement referred to the northern 122 feet of Tax Lot 100, "subject to the rights of the public in and to Lindberg County Road, County Road No. P-56." The 1913 survey line that plaintiffs contend is the real Lindberg Road runs through the middle of the land that was conveyed to the federal government in 1940. The Dorans hardly could have intended to convey to the federal government land on which to construct utility lines while, at the same time, reserving a strip of land running right down the middle of that easement. The only reasonable construction of the 1940 conveyance is that the reference to the reservation of rights as to Lindberg Road was intended to mean the Lindberg Road that had actually existed at the time and that intersected the land conveyed to the federal government for the utility easement. There is no evidence in this case that, when they referred to the same road in the 1944 deed in dispute in this case, the Dorans had a different understanding of the same wording.

Fourth, and perhaps less important, the 1958 deed by which John and Jeannie Doran conveyed what is now defendants' property described the property as the portion of Section 15 "lying Northerly of the County road known as E. J.

Lindberg Road *as it existed in March 1944.*" (Emphasis added.) The reference is unambiguously to the actual Lindberg Road, "as it existed in March 1944." The same deed went on to include an exception for the same rock quarry that was excepted in the 1944 deed. Obviously, one of the deeds was mistaken as to the location of the quarry. Under the circumstances, it seems clear to us that the mistake was in the 1944 deed and that the references to Lindberg Road were to the actual road and not to the one merely proposed in the 1913 survey.

In short, the trial court erred in concluding that the 1944 deed to plaintiffs' predecessors included property to the proposed road identified on the 1913 survey rather than to the actual Lindberg Road. Defendants, in other words, acquired by deed the disputed parcel that lies between the two. Given our conclusion in that regard on defendants' cross-assignment of error, it is not necessary to address the issue raised in plaintiffs' appeal as to whether the trial court erred in concluding that defendants acquired the same property by adverse possession.

Affirmed.