Argued and submitted April 10, Gold Beach High School, Gold Beach, judgment for plaintiff reversed and remanded as to the declaration regarding the scope of the mineral rights reservation; otherwise affirmed December 24, 2014, on appellant's petition for reconsideration filed January 5, reconsideration allowed by opinion March 18, 2015
See 269 Or App 904, 346 P3d 526 (2015)

COPELAND SAND & GRAVEL, INC.,
an Oregon corporation,
*Plaintiff-Respondent,*

*v.*

ESTATE OF ANGELINE DILLARD,
aka Angeline Smith Dillard;
Jane D. Evans; and also all other persons or parties
unknown claiming any right, title, lien or interest in the
property described in the complaint herein,
*Defendants,*

*and*

Richard SKIDMORE,
*Defendant-Appellant.*

Josephine County Circuit Court
11CV0323; A154147

341 P3d 187

Eric B. Mitton argued the cause for appellant. With him on the briefs was Hornecker, Cowling, Hassen & Heysell, L.L.P.

Clark E. Rasche argued the cause for respondent. With him on the brief were James R. Dole and Watkinson Laird Rubenstein Baldwin & Burgess, P.C.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.*

FLYNN, J.

---

* Flynn, J., *vice* Wollheim, S. J.

**FLYNN, J.**

This case concerns a dispute over the scope of a mineral rights reservation contained in a warranty deed that was executed in 1954 in Josephine County, Oregon. Defendant Skidmore, current owner of the mineral rights reservation, appeals a judgment of the trial court declaring that his rights "do not include any rights to sand, gravel, or other rock or earth materials, in whatever form, used for construction purposes." Defendant does not challenge the trial court's conclusion that sand and gravel are excluded from his mineral rights reservation, but he contends that "mineral" must be interpreted to include "massive deposits of common rock, such as basalt rock," even if that rock is destined to be used for construction purposes. We conclude that the text of the disputed reservation is ambiguous, that there is no extrinsic evidence to resolve the ambiguity, and that maxims of construction require us to construe the ambiguity in favor of defendant. Accordingly, we reverse the part of the judgment declaring that the reservation of mineral rights does not include "rock * * * used for construction purposes," and remand for further proceedings consistent with this opinion.

## FACTS

On October 12, 1954, Angeline Dillard executed a warranty deed conveying roughly 120 acres to Sunny Valley Lumber Company, subject to a reservation of mineral rights. The reservation states:

> "Excepting and reserving to grantor all minerals in, under and upon the premises with the usual rights and privileges of mining the same, grantor hereby reserving the exclusive right to mine and remove from said premises any and all minerals found therein, and to appropriate and use as her own, the proceeds of such mining without becoming in any manner accountable for waste."

Through transfers of ownership that are not in dispute, plaintiff Copeland acquired the deed to the property and defendant acquired the reservation of mineral rights. It is undisputed that plaintiff intends to use the property as a source of rock to turn into gravel for construction purposes.

Plaintiff filed suit seeking to quiet title and obtain specific declaratory relief regarding the meaning of the reservation of rights. The parties filed cross-motions for summary judgment, each arguing that the language of the reservation was unambiguous as a matter of law. The trial court granted plaintiff's motion, denied defendant's motion, and entered a judgment that grants plaintiff's requested declaratory relief but otherwise dismisses the parties' claims. Defendant assigns error to the granting of plaintiff's motion but not to the denial of his own motion.

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. Here, both parties assert that no material facts are in dispute and urge us to resolve the meaning of the mineral reservation as a matter of law. We, thus, analyze whether plaintiff was entitled to the requested declaratory relief as a matter of law.

In construing the meaning of the reservation contained in the deed before us, we apply the familiar three-step analysis described in *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997), for analyzing contracts. *James B. House Living Trust v. Thompson*, 230 Or App 595, 600, 217 P3d 228 (2009) (*Yogman* framework applicable to analyzing deeds). First, we examine the text and context of the provision. *Yogman*, 325 Or at 361. If the text and context of the provision are unambiguous, the analysis ends there. *Id.* If the text and context are ambiguous, however, we consider whether extrinsic evidence resolves the ambiguity. *Id.* at 363. Finally, if extrinsic evidence does not resolve the ambiguity, we apply established maxims of construction to determine the meaning of the disputed language. *Id.* at 364.

The first inquiry under *Yogman*—whether the text of the deed is ambiguous—presents a legal question. *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). A contractual provision is ambiguous if its wording, in context, is reasonably susceptible to more than one plausible interpretation. *Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 348, 876 P2d 761 (1994). Here, both parties contend that the reservation of "mineral" rights in

the 1954 deed is unambiguous, although they propose contradictory interpretations. Although the ability to identify multiple interpretations does not necessarily make the provision ambiguous, the parties' arguments convince us that both proposed interpretations are plausible.

Because it could be dispositive, we begin by considering plaintiff's contention that the Supreme Court's decision in *Whittle v. Wolff*, 249 Or 217, 437 P2d 114 (1968), controls the scope of the mineral rights reservation at issue here. The court in *Whittle* held that a reservation of "all subsurface rights, except water" did not include "the right to the sand and gravel in the land." 249 Or at 218, 224. Plaintiff contends that *Whittle* stands "for the rule that sand, gravel, and other similar earth materials, such as common variety rock used for construction purposes, are not 'minerals' as the term is used by parties to a mineral reservation in a deed."

We do not agree that *Whittle* stands for that broad proposition. Rather, *Whittle* focuses on the "deed in question" and the nature of the particular mining. *Id.* at 220, 223. The decision points to the close relationship between gravel and the surface and soil of the land before concluding that the parties would not have contemplated a reservation of "subsurface" rights that could effectively destroy the surface of the land. *Id.* at 223-24. *Whittle* does not hold that "mineral" reservations, as a matter of law, exclude rock intended for use in construction.

Aside from *Whittle*, plaintiff points to cases from other jurisdictions, which it argues have limited the definition of "mineral" rights to minerals having intrinsic market value, *i.e.*, value apart from being used for construction. *See Heinatz v. Allen*, 147 Tex 512, 217 SW2d 994 (1949); *Watkins v. Certain-Teed Products Corp.*, 231 SW2d 981 (Tex App 1950); *St. Land Bd. v. St. Dept. of Fish and Game*, 17 Utah 2d 237, 408 P2d 707 (1965). The fact that contemporaneous judicial decisions adopted plaintiff's interpretation of a "mineral" reservation convinces us that plaintiff proposes a plausible interpretation of what the language of this mineral reservation meant to the original grantor and grantee.

It appears, however, that the decisions plaintiff cites do not reflect the only accepted meaning of "mineral" reservations in 1954. As defendant points out, cases from around the country, including in Oregon, had reached a variety of conclusions about the scope of "mineral" rights reservations by 1954. *See Loney v. Scott*, 57 Or 378, 385, 112 P 172 (1910) (building sand is a "mineral" within the mineral laws of the United States); *McCombs v. Stephenson*, 154 Ala 109, 44 So 867 (1907) (shale is a "mineral" under mineral rights conveyance).[1] Thus, plaintiff's proposed interpretation is not necessarily the only plausible interpretation.

Defendant, for his part, argues that the term "minerals" includes stone and rock, such as basalt.[2] He points to definitions of "basalt" and "rock" in *Webster's Third New Int'l Dictionary* (unabridged ed 2002)[3] that support that interpretation. We are mindful of the rule that words in a contract should be given their plain and ordinary meaning and that dictionary definitions are one source of that meaning. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 308, 985 P2d 1284 (1999) (plain and ordinary meaning); *Yogman*, 325 Or at 362 (dictionary definitions are a source of plain meaning).

The dictionary definitions, however, are not focused on "mineral" in the context of a reservation of rights. Indeed, the same dictionary defines "mineral" so broadly as to encompass everything that is neither animal nor vegetable, a meaning not even defendant proposes for this reservation of rights. *Webster's* at 1437.

---

[1] We recognize that *Whittle* describes *Loney* as "not helpful" to the interpretation of a deed between private parties because *Loney* arose in the context of a mining claim on federal land. *Whittle*, 249 Or at 220. *Loney*, however, illustrates that there was no universal meaning for "mineral" rights among parties acquiring Oregon mining rights.

[2] Plaintiff objects that there is no "reliable evidentiary basis" for characterizing the disputed rock as "basalt." Given the posture of the appeal, however, we are not asked to determine whether the rock is basalt; we are asked to determine whether, as a matter of law, rock destined for use in construction is excluded from the reservation of "mineral" rights.

[3] *See State v. James*, 266 Or App 660, 667 n 3, 338 P3d 782 (2014) ("Because the content of *Webster's*—excluding the addenda section—has remained static since 1961, in general, it is appropriate to treat it as a contemporaneous source for statutes dating from at least that point forward.").

More to the point, defendant also cites to an Oregon statutory definition of "mineral" that applies in the context of mineral resources for the Department of Geology and Mineral Industries.[4] Under ORS 516.010(4), a mineral "includes any and all mineral products, metallic and non-metallic, solid, liquid or gaseous, and mineral waters of all kinds." Thus, defendant's proposal that its "exclusive right to mine * * * minerals" includes large common rock such as basalt is also a plausible interpretation of the disputed text.

There is nothing in the context of the deed as a whole that makes one of the interpretations implausible. The trial court assumed that the name of the purchaser on the deed, "Sunny Valley Lumber Company," permitted an inference that the purchaser intended to harvest timber from the property and that a company intending to harvest timber would not agree to a reservation of mineral rights that included "massive rock." We do not agree that those inferences, even if permissible, are so clear as to make plaintiff's interpretation of the reservation the only plausible interpretation. Because defendant and plaintiff both offer plausible interpretations of "mineral" as used in the mineral rights reservation, the term is ambiguous.

As a general rule, summary judgment is not appropriate in a contract dispute if the terms are ambiguous. *Madson v. Oregon Conf. of Seventh-Day Adventists*, 209 Or App 380, 384, 149 P3d 217 (2006). An exception to that general rule, however, "exists when there is no relevant extrinsic evidence to resolve the ambiguity." *Id.* at 389 n 3 (citing *Yogman*, 325 Or at 363-66). That is because "it is the existence of competing extrinsic evidence—and the triable factual issue that the evidence creates—that, as a general rule, makes the resolution of the meaning of an ambiguous contract on summary judgment inappropriate, not the existence of an ambiguity itself." *Dial Temporary Help Service v. DLF Int'l Seeds*, 255 Or App 609, 612, 298 P3d 1234 (2013). Here, both parties agree that there is no relevant extrinsic evidence of the intent of the contracting parties.

---

[4] Although defendant cites to a current statutory definition of "mineral," the 1954 definition was the same.

Plaintiff, however, urges us to apply the "principle" found in *Whittle,* namely, "[i]f the evidence does not disclose the grantor's intent, the deed is to be construed to conform to 'the intent commonly prevalent among conveyors similarly situated.'" 249 Or at 221 (quoting *Restatement (Third) of Property* § 243 (1940)).[5] Even assuming the validity of that principle, the record in this case, however, contains no evidence on which to base a determination of "the intent commonly prevalent among conveyors similarly situated," and, as set out above, cases from the first half of the twentieth century do not identify a "commonly prevalent" meaning of "mineral" rights reservations.

Because there is no extrinsic evidence to consider, we turn to step three in our *Yogman* analysis and look to maxims of construction. There is a well-established maxim of construction from property law that helps resolve this question.[6] "When there is an ambiguity in a deed, the general rule is to construe it against the grantor." *Verzeano v. Carpenter,* 108 Or App 258, 263, 815 P2d 1275 (1991), *rev den,* 312 Or 589 (1992). In the context of a reservation of an interest in real property, the party reserving the interest is the grantee and the holder of the rest of the interest in real property is the grantor. *Id.* According to the maxim described in *Verzeano,* then, the ambiguity in the mineral rights reservation should be construed in favor of defendant, who is the holder of the reserved interest in real property and, therefore, the grantee.

Another key source for maxims to govern our interpretation of writings, including deeds, is ORS chapter 42. *Portland Fire Fighters' Assn. v. City of Portland,* 181 Or App 85, 94 n 6, 45 P3d 162 (2002), *rev den,* 334 Or 491 (2002) (describing ORS chapter 42 rules of interpretation as maxims of construction under *Yogman,* although observing that

---

[5] *Whittle* predates *Yogman* by several decades, and the Supreme Court has not revisited *Whittle* to explain how the principle it describes fits into *Yogman's* analytical framework. Rather, cases since *Yogman* have interpreted deeds under the *Yogman* framework without reference to the two-step analysis that *Whittle* borrows from the 1940 *Restatement (Third) of Property. See, e.g., James B. House Living Trust,* 230 Or App at 600.

[6] In Oregon, "all interests in mineral rights are real property." *Cron v. Zimmer,* 255 Or App 114, 120, 296 P3d 567 (2013).

some of those rules could be implicated at earlier stages of the *Yogman* analysis); *Criterion Interests, Inc. v. The Deschutes Club*, 136 Or App 239, 244, 902 P2d 110 (1995), *rev den*, 322 Or 489 (1996) (applying ORS chapter 42 rules to a deed). Among those statutory maxims of construction is ORS 42.260, which provides, in pertinent part, "When different constructions of a provision are otherwise equally proper, that construction is to be taken which is most favorable to the party in whose favor the provision was made." Like the maxim described in *Verzeano*, that statutory maxim directs us to interpret the ambiguity in the reservation of rights in favor of defendant—the holder of that reservation.

Thus, we resolve the ambiguity according to the applicable maxims of construction and construe the ambiguity in favor of the interpretation defendant urges us to adopt—*viz.*, that "the mineral reservation at issue includes common rock such as basalt." Accordingly, we reverse the part of the judgment declaring that the reservation of mineral rights does not include "rock * * * used for construction purposes."[7] Because defendant has not assigned error to the denial of his cross-motion for summary judgment, we remand for further proceedings consistent with this opinion.

Judgment for plaintiff reversed and remanded as to the declaration regarding the scope of the mineral rights reservation; otherwise affirmed.

---

[7] The judgment also declared as a matter of law that defendant's reserved mineral interest is "activated" only by defendant exercising his right to recover minerals. Defendant does not argue that the "activated" ruling was wrong or ask us to reverse that part of the judgment, and we do not undertake that analysis *sua sponte*.