Argued and submitted May 20, reversed and remanded July 8, 2021

Kueng YEE,
*Plaintiff-Respondent,*

*v.*

Kim Y. YEE,
aka John Yee, and
Patricia Yee,
*Defendants-Appellants,*
*and*

Stanley YEE et al.,
*Defendants.*

Multnomah County Circuit Court
19CV16406; A173738

495 P3d 1285

This case involves a dispute between plaintiff Kueng Yee and defendant Kim Yee over a house once owned by their parents. After the death of their mother, defendant challenged the estate plan to distribute ownership of the house among six siblings, arguing that he had been promised the house by his parents in 1999, acted in reliance on those promises, and, therefore, was entitled to the house under an adverse possession theory. On appeal, defendant argues that the trial court erred in granting summary judgment, concluding that a receipt he signed for his one-sixth share of the estate unambiguously released his claims for adverse possession. *Held*: The trial court erred in granting summary judgment. Given the context in which it was executed, the receipt filed in the probate action did not unambiguously bar defendant's claims.

Reversed and remanded.

Terence L. Thatcher, Judge pro tempore.

Robert J. Miller, Sr., argued the cause for appellants. Also on the opening brief was The Law Office of Robert J. Miller, Sr.

Ted A. Troutman argued the cause for respondent. Also on the brief was Troutman Law Firm, P.C.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Reversed and remanded.

**JAMES, J.**

This case involves a dispute between plaintiff Kueng Yee and defendant Kim Yee over a house once owned by their parents.[1] When their mother died in 2007, her estate was probated in Clackamas County, and Kim Yee challenged the plan to distribute ownership of the house among six siblings, arguing that he had been promised the house by his parents in 1999 and had acted in reliance on those promises. In May 2012, the probate court entered a decree granting one-sixth ownership of the Portland house to each sibling, and defendant later signed a receipt for his share that was filed with the court and that included a broadly worded release of claims against the estate, personal representative, heirs, and others. It stated:

> "I, Kim Yung Yee (aka John Yee), being one of the residuary beneficiaries of the Estate of Yuk Ho Yee, deceased, hereby acknowledge receipt of my full distributive share from the Estate of Yuk Ho Yee, deceased, and I hereby release and forever discharge the Estate of Yuk Ho Yee, its personal representative, attorneys, the decedent, and their heirs, administrators, agents and assigns, and all other persons, firms or corporations who are connected therewith, from any and all claims, demands, damages, actions, causes of actions or suits or any kind or nature whatsoever."

In April 2019, plaintiff filed an action for partition in Multnomah County, asking for the home to be sold and the proceeds distributed to the siblings. Defendant filed a counterclaim for ownership of the house under a theory of adverse possession, along with associated claims for declaratory and injunctive relief. Plaintiff then moved for summary judgment on those counts, arguing, among other contentions, that defendant had released any adverse possession claims when he signed the receipt acknowledging his distributive share from the personal representative.

The trial court agreed with plaintiff that the receipt unambiguously relinquished all possible claims that

---

[1] Kim Yee's spouse, Patricia, is also a party on appeal. For purposes of this case, her interests are aligned with Kim Yee, and we do not discuss her counterclaims separately. The remaining defendants are the parties' four additional siblings and are not parties to this appeal. The references to "defendant" in this opinion refer to Kim Yee.

defendant might bring for adverse possession, reasoning that the court was not "permitted to use other evidence to read ambiguity into a formal writing that is otherwise clear on its face." The court granted the motion and entered judgment dismissing the claims.

On appeal, defendant argues that the court erred in concluding that the receipt unambiguously released his claims for adverse possession. Defendant points to evidence in the summary judgment record concerning the circumstances of formation of the "receipt" that, in his view, shows that the release language was never intended to bar his adverse possession claims; rather, he argues that the receipt was filed to facilitate closing of the estate and that all parties to the probate proceeding understood that the adverse possession claims would be subsequently litigated in a separate action. For the reasons that follow, we agree that, given the context in which it was executed, the receipt filed in the probate action does not unambiguously bar defendant's claims, and we therefore reverse and remand the court's grant of summary judgment.

In construing a written release, we examine the text of the provision in the context of the document as a whole; we also look to extrinsic evidence of the circumstances underlying the formation of the instrument. *Hawkins v. 1000 Limited Partnership*, 282 Or App 735, 754, 388 P3d 347 (2016), *rev den*, 361 Or 543 (2017) (citing *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006)). A provision is ambiguous "if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation[.]" *Batzer*, 204 Or App at 313 (internal quotation marks and citation omitted). Generally speaking, summary judgment is not appropriate when the terms of an instrument are ambiguous. *Copeland Sand & Gravel v. Estate of Angeline Dillard*, 267 Or App 791, 797, 341 P3d 187 (2014), *adh'd to on recons*, 269 Or App 904, 346 P3d 526 (2015).

In this case, as the trial court acknowledged, "the release on its face says more than it could possibly mean." Accordingly, the trial court concluded that the release "must surely refer only to relevant claims existing at the time the

release was signed." However, viewing the document as a whole, in the context that it was executed, another construction is also plausible: The release applied to claims arising out of the probate proceedings and the personal representative's administration of the estate. Those two equally plausible constructions evidence the ambiguity present, as we explain.

The instrument executed by defendant—the only signatory—is captioned "RECEIPT," and it appears to have been prepared by the personal representative for filing with the probate court. Following the broad release language, the document states:

> "I further hereby acknowledge that if any personal income taxes or fiduciary income taxes are assessed against the decedent, the estate, or the Personal Representative for which the Personal Representative is liable, I hereby agree to indemnify and *hold the Personal Representative harmless for such taxes.*

> "I hereby request that the Estate of Yuk Ho Yee be closed without *further notice or accounting.*"

(Emphases added.)

A "receipt" is part of the process contemplated by the probate code after the final account is approved, whereby the personal representative is relieved of liability for the administration of the trust. ORS 116.123 provides:

> "To the extent that the final account is approved, the personal representative and the surety of the personal representative, subject to the right of appeal, to the power of the court to vacate its final orders *and to the provisions of ORS 116.213, are relieved from liability for the administration of the trust.* The court may disapprove the account in whole or in part, surcharge the personal representative for any loss caused by any breach of duty and deny in whole or in part the right of the personal representative to receive compensation."

(Emphasis added.) ORS 116.213, in turn, provides:

> "*Upon the filing of receipts or other evidence satisfactory to the court that distribution has been made as ordered in the general judgment, the court shall enter a supplemental*

> *judgment of discharge. Except as provided in ORS 115.004, the discharge so entered operates as a release of the personal representative from further duties and as a bar to any action against the personal representative and the surety of the personal representative.* The court may, in its discretion and upon such terms as may be just, within one year after entry of the supplemental judgment of discharge, permit an action to be brought against the personal representative and the surety of the personal representative if the supplemental judgment of discharge was taken through fraud or misrepresentation of the personal representative or the surety of the personal representative or through the mistake, inadvertence, surprise or excusable neglect of the claimant."

(Emphasis added.)

Viewed in the context of the probate proceeding, the "release" portion of the receipt can be understood consistently with the overarching statutory scheme and the provisions governing discharge and release of liability of a personal representative, *i.e.*, as a release as to claims concerning the personal representative's administration of the probate estate, including but not limited to the distribution ordered by the court, in order to facilitate the closing of the estate and discharge of the personal representative from further duties. That narrower construction, limiting the release to the type that would follow from a receipt under the statutory scheme, would also make sense in light of the fact that defendant does not appear to have received much, if anything, in consideration for the release, considering that he was already entitled to the distribution according to the judge's decree, by the time it was executed; in fact, at oral argument before us, counsel acknowledged that defendant had received no consideration.[2]

Given that context, the extrinsic evidence proffered by defendant regarding the parties' understanding of the scope of the probate proceedings—and what was or was not resolved by the administration of the estate—introduces further doubt as to whether the release language of the receipt

_____

[2] Defendant has not challenged the enforceability of the release based on lack of consideration, so we consider that issue only to the extent that it bears on our understanding of the scope of the release.

was intended to bar adverse possession claims by defendant. Defendant offered excerpts from the hearing regarding the final accounting, during which the probate court and the attorney for the personal representative had the following exchange:

> "[PROBATE COURT]:  The devisees, one of them I guess would be [defendant], he would need to bring an action against everyone for adverse possession. What the stipulation ought to be that all parties and [defendant] *are not giving up any claims he has for adverse possession to the property nor is the estate and the heirs giving up any defenses they have.* Is that an accurate summary of what you had in mind?

> "* * * * *

> "[COUNSEL]:  *** What I understand we are doing is moving ahead to close the estate and this issue [adverse possession], simply by the manner in which it's been brought and the timing of it will have to wait for a later date. *And counsel will bring his action and whatever exists and whatever results in the fact we have issued closing the estate, they are going to have to live with that and we are going to have to live with that* but we are not stipulating to any, I want to make that clear, I am not stipulating[.]

> "[PROBATE COURT]:  I just want to make sure it is clear, I am dismissing, I wasn't going to hear it and I was going to dismiss that objection but with the understanding that it would have been a dismissal without prejudice from that standpoint and when I do that, *they retain whatever their rights may be to bring another action and you retain all the defenses you might have been able to raise here or could raise to that.*

> "[COUNSEL]:  I think it states it perfectly, Your Honor.

> "* * * * *

> "[PROBATE COURT]: Okay. *With that understanding then, I have signed the General Judgment Approving the Final Accounting. I appreciate you working it out.* It's kind of interesting, actually, but that is going to be Multnomah County's problem."

(Emphases added.)

Nothing in the receipt filed with the court suggests that the court's final accounting was irrelevant to the scope of the release of claims; implicitly, the request to close the estate without "further" notice or accounting suggests that the release should be construed consistently with the terms of the final accounting that had previously occurred. In light of the nature of the "receipt" filed with the court, the fact that its release language is so undefined in scope that it must be limited by additional context, and the fact that the parties to the probate proceeding expressly discussed closing the estate and leaving adverse possession claims for subsequent litigation, we conclude that the receipt does not unambiguously bar defendant's claims. Rather, there is a genuine issue of material fact on this record as to what the receipt filed in the probate action was intended to accomplish. We therefore reverse the grant of summary judgment and remand for further proceedings.

Reversed and remanded.