514 May 14, 2025 No. 431

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Sharon Simpson CARROLL
and Sharon Simpson Carroll Inheritance Trust,
*Petitioners,*

*v.*

LANE COUNTY,
*Respondent.*

Land Use Board of Appeals
2024054;
A186360

Argued and submitted February 18, 2025.

Micheal M. Reeder argued the cause for petitioners. Also on the brief was the Law Office of Mike Reeder.

Tiffany A. Johnson argued the cause for respondent. Also on the brief was Lane County Office of Legal Counsel.

Garrett H. Stephenson, Andrew J. Lee, and Schwabe, Williamson & Wyatt, P. C. filed the brief *amicus curiae* for Oregon Property Owners Association.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.*

HELLMAN, J.

Reversed and remanded.

_____

* Lagesen, Chief Judge vice Mooney, Senior Judge

**HELLMAN, J.**

Petitioners seek judicial review of a Land Use Board of Appeals (LUBA) order that affirmed a Lane County decision denying an application for a legal lot verification submitted by petitioners. Petitioners argue that they were entitled to the lot verification as the property is a "lawfully established unit of land," defined in ORS 92.010(3)(a)(B)(ii), because it was created by deed in 1908 before there were applicable ordinances or regulations. We review to determine whether LUBA's order is "unlawful in substance," ORS 197.850(9)(a), and conclude that it is. As a matter of law, the property was created by deed in 1908, making it a lawfully established unit of land and entitled to lot verification from the county. Any questions about the chain of title of the property from 1908 to today are relevant only to determine who owns the property today and do not bear on whether the property was a lawfully established unit of land in 1908. Thus, any questions about the ownership of the property are beyond the scope of this judicial review. Accordingly, we reverse and remand.

*Background*

This case concerns a property referred to as Property 1, which originally was part of a large, roughly rectangular-shaped parcel. Because this case involves property conveyances dating back to the early 1900s, we have included several maps to aid the reader in understanding the legal issues presented in this appeal.

Before August 1905, Fred and E. Y. S. Warner owned the rectangular-shaped parent parcel, depicted below:



Figure 1

On August 7, 1905, the Warners conveyed that property to Frank Blair by warranty deed, except for a tri-angular piece in the northwest of the property of about 62.55 acres, which is currently Tax Lot 3100.[1] A map depicting that conveyance is below:

---

[1] On September 26, 1905, Warner conveyed Tax Lot 3100 to Robert Allen and Frank Blair. The conveyance of Tax Lot 3100 was a 99-year lease from Warner to Allen and Blair.



Figure 2

On June 25, 1907, Mrs. H. A. Allen and Frank and Leona Blair conveyed by warranty deed, using a description that used the middle of the channel of Fall Creek as the northern boundary, most of their parcel to W. F. Gibson, which includes current Tax Lots 3000, 2600, 2700, 2702, 2703, 2704, 2800, and the portion of 2701 south of the creek. A map depicting that conveyance is below:



Figure 3

On December 14, 1908, Mrs. H. A. Allen and Frank and Leona Blair conveyed by warranty deed, using a metes and bounds description, most of their remaining parcel to H. M. Harkins, which includes current Tax Lots 2900 and 2901. Neither the 1907 nor 1908 deed descriptions included a .45-acre piece of the parent parcel located north of Fall Creek, which is Property 1.

A map depicting the locations of those pieces of property after the relevant conveyances is provided below.



Figure 5

The start of petitioners' involvement with Property 1 was in 1973, when A. M. Bromley, who owned Tax Lot 3100, quitclaimed Property 1 to Kearney and Patricia Simpson.

The subject of this case is petitioners' application to Lane County for legal lot verification of Property 1. The planning director denied that request on two bases. The director first relied on a maxim of deed construction described in *Hurd v. Byrnes*, 264 Or 591, 506 P2d 686 (1973), to conclude that Property 1 "should be assumed conveyed" with the rest of the property in the 1908 deed to H. W. Harkins. The director also concluded that, even if Property 1 was "conveyed otherwise and ultimately created in 1973," it was questionable whether Property 1 would have met applicable lot standards in 1973 such that it could be recognized as a

lawfully created lot or parcel. The director also noted the record did not contain any evidence that Bromley acquired title to Property 1 before quitclaiming it to the Simpsons.

Petitioners sought review of the planning director's decision, and after a public hearing, and reconsideration, the hearings official affirmed the director's denial of the legal lot verification request. Based on *Hurd*, the hearings official rejected petitioners' contention that Property 1 was a lawfully established unit of land based on the 1908 deed. The hearings official concluded that, based on *Hurd*, Property 1 was presumed conveyed with Tax Lot 3100 in 1905 from Warner to Allen and Blair. The hearings official further concluded that the 1973 quitclaim deed did not establish Property 1 as a discrete unit of land because "it is reasonable to infer that the parties to the 1973 quitclaim deed did not intend to divide tax lot 3100 and create a discrete unit of land. Instead, the evidence suggests that the parties intended to adjust the property lines and clear any doubt of ownership between tax lot 2701 and tax lot 3100 based on the findings of the survey work." The hearings official concluded that that Property 1 "was not created as a remainder property where it was never described in any deed until the 1973 quitclaim deed." The hearings official ultimately concluded that that the record was insufficient to establish Property 1 as a legal lot, based on the above and other ownership ambiguities in the record.

Petitioners sought review by LUBA, arguing that the hearings official erred as a matter of law and that the decision was unsupported by substantial evidence. Petitioners first asserted that Property 1 was a lawfully established unit of land created by deed in 1908, when it was all that was left of the parent parcel, and that it is undisputed that the size and shape of Property 1 has not changed by deed since then. LUBA addressed the issue by applying Lane Code (LC) 13.030(3)(n), which defines "lawfully established unit of land." LUBA concluded that the use of the word "created" in that definition required a description of the unit of land created in the deed. LUBA thus concluded that the 1908 deed did not "create" Property 1, because "that simple existence as a remainder does not create a legal lot" and

affirmed the hearings official's decision that the 1908 deed did not establish Property 1 as a legal lot. LUBA also concluded that the hearings official's consideration of *Hurd* was not legal error.

Petitioners also asserted that the hearings official's decision was not supported by substantial evidence. LUBA concluded that substantial evidence supported the hearings official's decision that "petitioners did not meet their burden to show Property 1 is a legal lot, separately conveyed by deed." In particular, LUBA pointed out that the hearings official relied on *Hurd*, ambiguity in the deed history, and gaps in the record to show a chain of ownership of Property 1 to Bromley in 1973.

Petitioners now seek judicial review of LUBA's order.

*Analysis*

Under LC 13.140(3), "[a] legal lot verification will be approved if the subject property is a lawfully established unit of land as defined by this chapter." Under LC 13.030(3) (n)(ii)(bb), which uses the same language as ORS 92.010(3) (a)(B)(ii) to define "lawfully established unit of land," provides, as relevant here, that "[a] lawfully established unit of land means *** [a]nother unit of land created *** [b]y deed or land sales contract, if there were no applicable planning, zoning or subdivision or partition ordinances or regulations." It is undisputed that in 1908 and before, there were "no applicable planning, zoning or subdivision or partition ordinances or regulations" that applied to Property 1. Thus, the issue before us in this case is whether Property 1 was "created" by the 1908 deed.

LUBA construed LC 13.030(3)(n)(ii)(bb) to require a description of the unit of land for it to be created by deed, based on the definition of "created" and a statement from its case in *Landwatch Lane County v. Land County*, 80 Or LUBA 415, 419 (2019).[2] LC 13.030(3)(n)(ii)(bb) merely repeats the language from ORS 92.010(3)(a)(B)(ii). As a result, we construe that provision of the county code as a matter of law,

_____

   [2] We reject the county's position that LUBA did not determine that a description was necessary.

applying our usual methodology for construing statutes. *Gilmour v. Linn County*, 279 Or App 584, 589, 379 P3d 833 (2016) ("[A] local government's interpretation of a land use regulation that implements *state* law is not entitled to deference under ORS 197.829." (Emphasis in original.)). As with any statutory interpretation question, we seek to determine the intent of the legislature by applying our usual methodology of examining the statutory text, in context, along with any legislative history that is helpful to our analysis. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Our statutory analysis leads to a conclusion that LUBA's interpretation of the term "create" in LC 13.030(3) (n)(ii)(b) was legally erroneous. The plain meaning of "create" as a verb includes "to bring into existence : make out of nothing and for the first time." It also means "to cause to be or to produce by fiat or by mental, moral, or legal action: such as *** to invest with a new form, office, or rank : constitute by an act of law or sovereignty *** to bring about by a course of action or behavior." *Merriam-Webster's Unabridged Dictionary*, https://unabridged-merriam-webster-com.soll. idm.oclc.org/unabridged/create (accessed May 6, 2025). However, nothing in the text of the statute or the definition of the verb indicates that "create" requires a description of the thing to be "created." Instead, a deed "creates" a unit of land when the resulting unit of land is a legal consequence of the deed itself. That understanding of the term "create" also aligns with the legislative intent of the statute to treat as lawfully created those units of land that were brought into existence through land use transactions before land use regulations applied.

Having determined that a deed does not have to describe a unit of land to create it, we next address whether the legal consequence of the 1908 deed was to create Property 1. As explained below, we conclude that it was.

We first address petitioner's argument that LUBA erred in conducting a substantial evidence review of the deed. We agree. The construction of a deed is a *legal* question. In answering that question, we apply the framework for construing contracts from *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). *Copeland Sand & Gravel, Inc. v. Estate*

*of Dillard*, 267 Or App 791, 794, 341 P3d 187 (2014), *adh'd to on recons*, 269 Or App 904, 346 P3d 526 (2015). Under that framework,

> "we examine the text and context of the provision. If the text and context of the provision are unambiguous, the analysis ends there. If the text and context are ambiguous, however, we consider whether extrinsic evidence resolves the ambiguity. Finally, if extrinsic evidence does not resolve the ambiguity, we apply established maxims of construction to determine the meaning of the disputed language."

*Id.* (citations omitted). Whether the text and context of the deed is ambiguous "presents a legal question." *Id.* "In determining whether a term in a deed is ambiguous, the court can consider evidence of the circumstances surrounding its execution." *James B. House Living Trust v. Thompson*, 230 Or App 595, 600, 217 P3d 228 (2009); *see also Farnsworth v. Meadowland Ranches, Inc.*, 321 Or App 814, 823 n 5, 519 P3d 153 (2022) (explaining that, under the *Yogman* framework, extrinsic evidence of the circumstances of contract formation can be considered in determining whether an ambiguity exists, as explained in *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 129 P3d 773, *rev den*, 341 Or 366 (2006)). "A provision is ambiguous only if it is capable of more than one plausible and reasonable interpretation." *James B. House Living Trust*, 230 Or App at 601.

Here, it is undisputed that neither the 1907 deed to Gibson nor the 1908 deed to Harkins included Property 1 in the description of the land conveyed. The legal consequence of a deed that conveys some, but not all, of the grantor's property, is that the grantor retains ownership of what is not conveyed, and the deed "creates" a remainder parcel. *See, e.g., Tab Enterprises of Bend, Inc. v. Heare*, 37 Or App 879, 885, 588 P2d 671 (1978) ("The original Benson deed was inadequate to convey title to the property lying between the rim and the Deschutes River. As a result, Benson continued as the owner of the disputed property at the time of the Benson-Blay deed."). Here, the legal consequence of the 1908 deed which conveyed all but Property 1 is that Property 1 was "created" as a unit of land, and Blair retained ownership of it.

The county asserts that *Hurd* compels a different conclusion. We disagree. In *Hurd*, the Supreme Court established a maxim of construction for real estate that applies in a very limited set of real estate conveyances, which the court summarized as follows:

> "Where narrow strips of land have been the subject of dispute in construing various conveyances, we have held that there should be a constructional preference in favor of the grantee. We have pointed to a number of considerations which warrant this preference. We have taken the view that where the conveyance or reservation of title to narrow strips of land is in question, the probable intent of the grantor is not to retain title if he does not own abutting land. Our previous cases recognizing this principle have involved conveyances bordering on a street or stream. We have assumed that in the absence of an express provision to the contrary the grantor, in conveying land described as bordering a street or stream, ordinarily intends to also convey his title to the street portion of the lot or to the bed of the stream. This rule of construction is also founded on policy considerations, including the prevention of vexatious litigation and the prevention of the existence of strips of land the title to which would otherwise remain in abeyance for long periods of time. Supporting this conclusion is the general rule that ambiguities in a deed are to be construed against the grantor."

*Hurd*, 264 Or at 598-99 (citing *Fahey v. City of Bend*, 252 Or 267, 449 P2d 438 (1969); *McAdam et ux. v. Smith et al.*, 221 Or 48, 350 P2d 689 (1960); *Cross v. Talbot et al.*, 121 Or 270, 254 P 827 (1927); 4 Tiffany, Real Property 106, § 996 (1939); 3 American Law of Property 428-9, § 12.112 (Casner ed. 1952)).[3]

---

[3] That principle is also expressed in ORS 93.310, which has been a part of Oregon law since the state's founding and provides a more comprehensive understanding of how to construe real property conveyances when construction is doubtful:

"The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:

"(1) Where there are certain definite and ascertained particulars in the description, the addition of others, which are indefinite, unknown or false, does not frustrate the conveyance, but it is to be construed by such particulars, if they constitute a sufficient description to ascertain its application.

For purposes of our analysis, there are two key parts of *Hurd*. First, outside of the unique circumstances in *Hurd*, the maxim of construction has only been applied to boundary disputes over narrow strips of land.[4] And more particularly, it is a maximum of construction that originated from deeds using streets and streams as borders, leaving undescribed in the deeds the strips of land in the street rights-of-way and stream beds. *See Nelson v. Vandemarr*, 281 Or 65, 573

---

"(2) When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount.

"(3) Between different measurements which are inconsistent with each other, that of angles is paramount to that of surfaces, and that of lines paramount to both.

"(4) When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road, or the thread of the stream, are included in the conveyance, except where the road or bed of the stream is held under another title.

"(5) When tidewater is the boundary, the rights of the grantor to low watermark are included in the conveyance, and also the right of this state between high and low watermark.

"(6) When the description refers to a map, and that reference is inconsistent with other particulars, it controls them, if it appears that the parties acted with reference to the map; otherwise the map is subordinate to other definite and ascertained particulars."

[4] In *Hurd*, the plaintiffs brought a suit to enjoin the defendant from trespassing on a parcel of land to which the plaintiffs claimed title. The disputed property was a 25-foot wide strip of land running from the plaintiffs' land through property owned by the defendant. When both properties were owned by Watters, he had conveyed the defendant's property, excepting from the conveyance the strip of land for purposes of an irrigation and drainage ditch. The plaintiffs later purchased their property from Watters. The plaintiffs claimed the exception gave them fee title to the strip and the defendant claimed that, under the circumstances of the conveyance, the grantor intended to convey fee title to the strip with the defendant's property, but retain a nonexclusive easement for purposes of the ditch. The court concluded that the language used in the deed was ambiguous as to the grantor's intent and subsequent conduct did not provide sufficient evidence to resolve the ambiguity. The court thus determined that it would apply a different consideration:

"It is our opinion that the rule of construction applied in our previous cases where the strip was not described (strips bordering a street or stream) should be applied in the present case, although we recognize that not all of the reasons advanced in the cases involving an undescribed strip are applicable where, as here, the strip and its use is described. We think that in the absence of an express provision withholding in the grantor title to the strip described or circumstances clearly indicating an intent to withhold title, it is fair to assume that a statement in the deed of a present or proposed use ordinarily indicates an intention to reserve only an easement in the strip."

264 Or at 598-99.

P2d 1232 (1978) (involving long, narrow strip of land along southern edge of a subdivision); *Fossi v. Myers*, 271 Or 611, 533 P2d 337 (1975) (involving ownership of vacated roadway); *Small v. Spencer*, 82 Or App 324, 728 P2d 85 (1986) (neighbor dispute over narrow, triangular piece of property); *Dept. of Transportation v. Tolke*, 36 Or App 751, 586 P2d 791 (1978) (involving facts similar to *Hurd*, in that deed was ambiguous as to whether described railroad right-of-way strip was conveyed or excepted from conveyance).

Second, the maximum of construction established in *Hurd* applies only when the conveyance is ambiguous, and no other extrinsic evidence resolves the ambiguity. "A legal description of real property is ambiguous if it is susceptible to more than one plausible interpretation." *Dept. of Transportation v. Dietrich*, 330 Or App 449, 463, 544 P3d 1004 (2024).

With that understanding of *Hurd*, we readily conclude that it does not apply in this case. Most importantly, this case is not about a title or boundary dispute. There were two conveyances that could be at issue in this case under *Hurd*, the one in 1907 and the one in 1908. As we understand the record, there is no dispute that petitioners are the current owners of the land immediately south of Property 1, which was property conveyed out of the parent parcel by the 1907 deed. Moreover, the owners of the land immediately east of Property 1, the property conveyed by the 1908 deed, have not claimed any ownership interest in Property 1.[5] *Hurd* and other cases employing similar principles are used to resolve boundary disputes between adjoining properties when the courts are called upon to determine competing claims of ownership. The record does not reveal any competing ownership claims for Property 1.

_____

[5] We note that the hearings official concluded that Property 1 was presumed conveyed with Tax Lot 3100 in 1905, based on *Hurd*. LUBA appears to have affirmed that conclusion based on its conclusion that the hearings official did not err in relying on *Hurd* and based on its application of substantial evidence review. Both of those bases for affirmance constituted legal error as explained in this opinion. We separately note that we can discern no legally correct basis on which *Hurd* could be applied to reach the conclusion that Property 1 was presumed conveyed in 1905 as the 1905 deed from Warner to Allen and Blair unambiguously did not include Property 1 and, at that time, Property 1 was still part of the parent parcel. In any event, the record does not contain any evidence that owners of Tax Lot 3100 claim any ownership interest in Property 1.

*Hurd* is further inapplicable because the property description in the 1908 deed is not ambiguous. The 1908 deed used a metes and bounds description that did not include Property 1. *See generally* ORS 93.310(1) ("Where there are certain definite and ascertained particulars in the description, the addition of others, which are indefinite, unknown or false, does not frustrate the conveyance, but it is to be construed by such particulars, if they constitute a sufficient description to ascertain its application."). There is no evidence of the circumstances of the conveyance in 1908, which is the only evidence extrinsic to the deed that may be considered. *James B. House Living Trust*, 230 Or App at 600 ("In determining whether a term in a deed is ambiguous, the court can consider evidence of the circumstances surrounding its execution.").

Additionally, to the extent the county asserts that the chain of title to Property 1 from 1908 to today, including the existence of the 1973 quitclaim deed, bears on whether Property 1 can be verified as a legal lot, we reject that assertion. Under ORS 92.017(1), "[a] lawfully created lot or parcel remains a discrete lot or parcel unless the lot or parcel lines are vacated or the lot or parcel is further divided as provided by law." There is nothing in the record to suggest that the parcel lines to Property 1 have changed since 1908.

In sum, whether a deed is ambiguous is a legal, not factual, question. Accordingly, LUBA erred in applying substantial evidence review to that question. In addition, LUBA erred in interpreting ORS 92.010(3)(a)(B)(ii). Using our well-established statutory analysis, under that statute, a unit of land is created by a deed, even if it is not specifically described, when the resulting unit of land is a legal consequence of the deed itself. Applying that rule here, the legal consequence of the 1908 deed was to create Property 1 as a lawfully established unit of land which is entitled to lot verification from the county. *Hurd* does not alter that conclusion because it is inapplicable. Any questions about the chain of title of the property from 1908 to today are not relevant to whether Property 1 is a lawfully established unit of land and are beyond the scope of this judicial review. Accordingly, we reverse and remand.

Reversed and remanded.