Argued October 11, 1938; affirmed January 31, 1939

# VALE *v*. STATE INDUSTRIAL ACCIDENT COMMISSION

(86 P. (2d) 956)

*Gunther F. Krause* and *Gus J. Solomon*, both of Portland (Levenson & Solomon, of Portland, on the brief), for appellant.

*Oliver Crowther*, Assistant Attorney General (I. H. Van Winkle, Attorney General, and Victor Griggs, Assistant Attorney General, on the brief), for respondent.

LUSK, J.  The plaintiff and appellant is the widow of James Lee Vale, deceased, who died of pneumonia on January 15, 1937, at Portland, Oregon.  Claiming that his death was the result of a personal injury sustained by accident arising out of and in the course of his employment while the deceased was subject to the Workmen's Compensation Law, the plaintiff applied to the State Industrial Accident Commission for benefits as provided in the law.  The commission rejected her claim.  Thereupon she appealed to the Circuit Court of Multnomah County, and in a jury trial recovered a verdict.

The trial judge, being of the opinion that the evidence was insufficient to support the judgment, set it aside and ordered a new trial. From that order the plaintiff has appealed.

The sole question here is upon the correctness of that ruling.

The plaintiff's claim, briefly stated, is that the decedent, on November 17, 1936, ate contaminated food furnished by his employers, as a result of which he contracted a severe gastroenteritis and food infection which brought about a condition of weakness and lowered vitality and resistance that led to pneumonia to which he succumbed some two months after his original sickness.

There is evidence of the following facts: On September 9, 1936, the decedent, Vale, a man fifty-seven years of age and in good health, commenced work as a donkey engineer for Anliker Brothers, a partnership, who were engaged in logging operations as subcontractors under Consolidated Timber Company, a corporation. These operations were carried on about sixteen miles west of Forest Grove in this state. Vale's home was in Portland, where he spent his week-ends. While in the woods he boarded at the Consolidated camp which was located about three miles from Anliker camp. This was pursuant to a provision of the contract between Anliker Brothers and the Consolidated Timber Company, and for present purposes it may be assumed that meals taken by Vale at the Consolidated camp were furnished by his employers.

In the latter part of July, 1936, an epidemic of diarrhea broke out among the men taking their meals at the Consolidated camp. At that time, at the request of the National Hospital Association, Dr. David B. Charlton, a bacteriologist and chemist, made a study of the food and sanitary conditions at the Consolidated camp. He

found that the bacterial count in the milk supply was too high and recommended that milk which was sent to the table but not consumed should not be held over and served again on the following day without repasteurization. He also found that the refrigerating system was inadequate and made a report in which he stated:

"A probable cause of the illness is that gastrointestinal upsets have been induced by toxic substances, most probably through the milk or milk-containing foods such as cottage cheese and scrambled eggs, none of which were properly refrigerated."

At that time, that is, July, 1936, practically all the men — between 150 and 200 — who were taking their meals at the Consolidated camp were affected with mild cases of diarrhea.

Dr. Charlton's recommendation as to repasteurizing the milk was acted on at once, and milk which had been once served on the table was used only for cooking, but a refrigerating system was not installed until the next year.

All the evidence, however, is to the effect that following Dr. Charlton's inspection the number of cases of diarrhea dwindled, and there is no evidence that at the time it is claimed that the decedent was affected any condition existed which approached the proportions of an epidemic.

Vale suffered his first attack of diarrhea on Friday, November 20. He was sick on his return to his home in Portland from camp that evening. He went back to work on the next Monday and was home again on the evening before Thanksgiving, Wednesday, November 25, in the same condition. His sickness continued until Monday, but he returned to work that day. December 4 was the last day that he worked. He came home with a

cold and suffering from a severe attack of diarrhea. On December 5, at Mrs. Vale's request, the National Hospital Association sent Dr. Walter L. Kelsey to attend the decedent. Dr. Kelsey gave him some medicine and prescribed a diet of fruit juices, but he was unable to retain this food on his stomach. A day or two later Mrs. Vale called Dr. Kelsey back, explained to him that her husband had had diarrhea and was vomiting, and the doctor put him on a diet of milk and light foods. Vale remained in bed for about ten days, ''and then'', to quote from Mrs. Vale's testimony, ''he got stronger, and then he got up and he was up and around, but he was always weak and he couldn't eat, he couldn't eat hearty foods, and about the only thing that agreed with him were the soft foods, soups and things like that; and when he would try to eat solid things, he would always vomit and have diarrhea.'' Mrs. Vale also testified that the decedent declined in strength and lost weight steadily, beginning about a week after Thanksgiving, and that ''his clothes just hung on him.'' On January 9, 1937, the decedent became seriously ill. He had chills and a high temperature and coughed a great deal. Dr. E. W. Stratford attended him and ordered him to the hospital. There his illness was diagnosed as lobar pneumonia. He died on January 15.

Neither Dr. Kelsey nor Dr. Stratford, the physicians who attended the decedent, was called as a witness by the plaintiff. The foregoing testimony relative to the decedent's sickness and physical condition was given entirely by his widow and other relatives and by one of the employees of Anliker Brothers. Dr. Morton Goodman, a physician and surgeon testifying as an expert for the plaintiff, was asked a hypothetical question which assumed the existence of the facts which have

been related regarding Vale's sickness, the symptoms which he manifested, the treatment given him, his response to it, his hospitilization and death, and in which he was asked to give his opinion as to what the connection was, if any, between the diarrhea and the pneumonia and the death of Mr. Vale; and gave it as his opinion that the diarrhea was in all probability a contributing factor in the decedent's illness and death. He testified that in all probability the decedent experienced a lowered resistance to the infection which subsequently terminated in his death. He further gave as his opinion that where a group of men who eat their meals at the same place are taken ill at the same time with diarrhea, in all probability they are suffering from a food infection, and that the offending food probably had been taken at some meal within twelve or fourteen hours previous to the time that the illness manifested itself.

■ It is the defendant's position that the verdict of the jury cannot be permitted to stand without violating the established rule of evidence in this state that inferences may not be based on inferences. The plaintiff argues first that this is not true, and second that the doctrine regarding inferences should be re-examined and limited. In the view that we take of the case, however, it is unnecessary to enter upon a discussion of these matters, because we are of the opinion that the evidence which lies at the foundation of plaintiff's claim is insufficient.

As stated, there were 150 to 200 men taking their meals at the Consolidated camp. The only evidence as to the prevalence of diarrhea among these men in the week beginning November 16 was given by the witness, Joseph Elmer Conn, "bull buck" for Anliker Brothers. He testified that on Tuesday, November 17, two men on

his crew, whom he named, had diarrhea and "quite a number" of other men eating at the Consolidated camp, and that on Thursday, November 19, he called at the first aid station at the Consolidated camp and that "several men" were there getting treatment for this condition. He further testified that the condition which existed on Tuesday, November 17, continued until Thursday night. Whether the men who were affected on Tuesday were the same men who were affected on Wednesday and Thursday does not appear. Vale's first attack of diarrhea was manifested on the evening of Friday, November 20, when he returned to his home in Portland for the week-end. The record is barren of evidence that any other person in the camp was so afflicted on that day.

Dr. Goodman testified that the incubation period of food infection is ordinarily from four to eighteen hours, and further, as we have stated, that where a group of men eating at the same place become ill with diarrhea at the same time in all probability they are suffering from food infection and the offending food probably has been eaten within twelve to fourteen hours before the onset of the illness. Dr. Goodman did not definitely indicate how many he meant by a group of men, although on cross-examination he referred to "a mass epidemic of diarrhea," and when asked what he called a mass epidemic said "quite a few," and explained quite a few as meaning "between eight and twenty-five."

There is no evidence in the record whatever that as many as eight men had the diarrhea on any day in the week of November 16. What "several men" and "quite a number of men" mean we are not advised except by their dictionary meanings—the former "an indefinable

number more than one or two," the latter "an indefinite aggregation." And, as we have stated, there is not a syllable of evidence that anyone other than Vale had diarrhea on Friday, November 20.

■ There are other causes of diarrhea than food infection, as the record in this case indicates. In some persons it may be caused by wholesome foods of certain kinds. It may be due to excitement or fright. In a crew of 150 to 200 men working in the woods a certain number of cases are to be expected from time to time. It is a symptom of intestinal influenza, which is a very definite disease caused by a filterable germ. Indeed, Dr. Kelsey, who attended Vale when he was ill in the early part of December and who was called as a witness, not by the plaintiff, but by the defendant, testified that Vale was suffering from intestinal influenza at that time and prescribed for him accordingly. He said that he was given no history of diarrhea. In the absence of any direct evidence, and there is none, that food served at the Consolidated camp in November of 1936 was infected, it was incumbent on the plaintiff to prove facts from which a reasonable inference could be drawn that the decedent's illness was due to food poisoning, and not to some other cause. It is not claimed that isolated cases of diarrhea in as large a group of men as that with which the decedent was associating will suffice. We may not expand into large numbers nor translate into an epidemic the wholly indefinite estimates of the plaintiff's witness. Possibilities are not enough; the law requires reasonable probability: *Patty v. Salem Flouring Mills Co.*, 53 Or. 350, 357, 96 P. 1106, 98 P. 521, 100 P. 298; *Carter v. Howard, ante* p. 507, 86 P. (2d) 451. Evidence must be substantial in order to carry conviction, and neither jury nor judge are justified in drawing

conclusions when the essential facts are left to specula-
tion. That, also, is true of expert witnesses: *Frint v.
Amato*, 131 Or. 631, 647, 284 P. 183.

■ In view of the vague character of the evidence
which furnished the hypothesis for the medical testi-
mony as well as for the finding of the jury, we are
constrained to hold that the plaintiff has failed to
sustain the burden of proving that the decedent's death
was caused by contaminated food furnished by his
employers.

■■ One other contention needs to be noticed. The
original answer filed by the defendant contained no de-
nial of paragraph three of the complaint, which alleged
that the decedent developed gastroenteritis as the result
of eating contaminated food furnished by his employ-
ers. There was no express admission of the allegation,
but merely an admission by failure to deny. Before trial
an amended answer was filed correcting the omission by
an express denial of paragraph three of the complaint.
Plaintiff introduced in evidence the original answer as
proof of an admission by the defendant of a material
fact, and defendant offered testimony for the purpose
of showing that the implied admission of the original
answer was an inadvertence. The court, without objec-
tion on the part of plaintiff, submitted to the jury the
following interrogatory to be answered as a special
verdict: "Was there any intention on the part of the
defendant commission, by its original answer filed here-
in, to admit the allegations of paragraph three of plain-
tiff's complaint?" The jury answered the question
"no", the only answer, as we think, that they could
properly have given under the evidence. The plaintiff
urges, however, that this special verdict should be dis-
regarded since questions to the jury should relate to
the ultimate facts and not merely the evidential facts

upon which such ultimate facts rest: 27 R. C. L., Verdict, 871, § 44; *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 659, 253 P. 611; *Freedman v. N. Y., N. H. and H. R. Co.*, 81 Conn. 601, 71 Atl. 901, 15 Ann. Cas. 464. We approve the rule of practice announced in the foregoing authorities, but think that plaintiff is in no position to invoke it, since she made no objection nor took any exception at the trial to the submission of this special verdict. The evidence shows that the failure to deny the paragraph in question in the original answer was an obvious inadvertence, and, the jury having taken that view, this court should not ignore their finding and sustain a verdict based on insufficient evidence because of a slip on the part of an attorney or a stenographer, or both, in preparing a pleading.

For the reasons herein given the order of the circuit court setting aside the judgment and granting a new trial is affirmed.

RAND, C. J., and BEAN and BAILEY, JJ., concur.