Argued and submitted May 31, affirmed September 21, 2022

# Allen FARNSWORTH
## and Stephanie Farnsworth,
*Plaintiffs-Respondents,*

*v.*

# MEADOWLAND RANCHES, INC.,
## an Oregon Corporation et al.,
*Defendants,*

*and*

## Patrick O. McPURDY
## and Rose Marie McPurdy,
*Defendants-Appellants.*

### Harney County Circuit Court
### 19CV18173; A175091

519 P3d 153

Plaintiffs, the Farnsworths, and defendants, the McPurdys, own neighboring properties outside Burns. Both properties used to be part of a larger plot that Meadowland purchased in the 1960s with the intention of subdividing it. Meadowland partitioned and sold over 1,400 parcels before its administrative dissolution in 1982, but it never recorded a plat with the county, and the deeds that it recorded do not reference any map or plat. In both the original 1971 deed for plaintiffs' property and the original 1978 deed for defendants' property, Meadowland reserved "an easement of forty feet (40 feet) along all boundaries for public highway use in common with others, with power to dedicate." In recent years, a dispute arose between plaintiffs and defendants regarding the use of a road on the eastern edge of plaintiffs' property. Plaintiffs brought this quiet-title action, asserting an exclusive right to use the road, and defendants counter-claimed, seeking a declaration that they "enjoy a valid easement." After a bench trial, the trial court ruled in plaintiffs' favor. On appeal, defendants contend that they were legally entitled to judgment in their favor. *Held*: The trial court did not err. First, it did not err in concluding that an express easement had not been proved, because the reservation in the original deeds was an easement in gross, personal to Meadowland. Second, it did not err in concluding that an implied public easement had not been proved, given its express and implied factual findings. Third, it did not err in rejecting defendants' third-party beneficiary theory, which was premised on the existence of an express or implied public easement. Finally, it did not err in concluding that an implied public dedication had not been proved, because Meadowland never recorded a plat or otherwise clearly and unequivocally manifested to the public an intention to dedicate the entire outer 40 feet of each parcel as public roads.

Affirmed.

W. D. Cramer, Jr., Judge.

Dominic M. Carollo argued the cause for appellants. Also on the briefs was Carollo Law Group.

Shawn E. Logan argued the cause and filed the answering brief for respondents. Also on the supplemental brief was Logan & Copple, P.C.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

This case involves a dispute between neighboring landowners regarding who may use a gravel road located on plaintiffs' property (the Road). Plaintiffs Allen and Stephanie Farnsworth and defendants Patrick and Rose McPurdy own neighboring properties. Both properties were once owned by Meadowland Ranches, Inc. (Meadowland). In the original deeds conveying them, Meadowland reserved "an easement of forty feet (40 feet) along all boundaries for public highway use in common with others, with power to dedicate." Plaintiffs brought this action to quiet title to their property, asserting an exclusive right to use the Road. Defendants counterclaimed, seeking a declaration that defendants "enjoy a valid easement" over the Road.[1] After a bench trial, the trial court found in plaintiffs' favor. Defendants appeal the resulting judgment. For the following reasons, we affirm.

## I.  FACTS

"In reviewing a trial court's determinations following a bench trial, we review the trial court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Pistol Resources, LLC v. McNeely*, 312 Or App 627, 629, 496 P3d 28 (2021) (internal quotation marks omitted). We state the facts, briefly, in accordance with that standard.[2]

In the early 1960s, Meadowland purchased a large plot of land outside Burns and planned to develop it. Meadowland partitioned the property and sold over 1,400 parcels before its administrative dissolution in 1982. Each deed contained the following reservation:

"*Reserving therefrom an easement of forty feet (40 feet) along all boundaries for public highway use in common with*

---

[1] The McPurdys were not the only defendants in the action, but they are the only defendants who appealed the judgment, so we limit our discussion to the claims against and by the McPurdys. All references to "defendants" herein are to the McPurdys.

[2] We do not understand defendants to request *de novo* review, nor would *de novo* review be warranted here. *See* ORS 19.415(3) (allowing discretionary *de novo* review in certain types of cases); ORAP 5.40(8)(c) (stating that we will exercise that discretion "only in exceptional cases").

*others, with power to dedicate*, and, excepting therefrom all petroleum, oil, minerals, and products derived therefrom, within or underlying said land or that may be produced therefrom and all rights thereto; and further reserving a right of way, with right of entry upon, over, under, along, across, and through the said land for the purpose of erecting, constructing, operating, repairing and maintaining pole lines with cross arms for the transmission of electrical energy, and for telephone lines, and/or for laying, repairing, operating and renewing, any pipe line or lines for water, gas or sewerage, and any conduits for electric or telephone wires, and/or a right-of-way along, across, and through said land for the purpose of constructing irrigation and drainage ditches or other facilities, *and reserving to the Seller the sole right to convey the rights hereby reserved.*"

(Emphases added.)

Despite its plans, Meadowland never recorded a plat with the county, and the deeds do not reference any map or plat. A 1963 map titled "Meadowland Ranches Road Map" was found in Meadowland's file on the county's website and admitted at trial; that map shows a combination of existing and proposed paved, gravel, and other roads running through the planned development, some of which exist today. However, beyond whatever the deeds themselves accomplish, Meadowland never conveyed any easement rights to anyone, nor did it formally dedicate any roads. Consequently, as the trial court put it, "The Meadowland Ranches venture has left a legacy of confusion, frustration, uncertainty, and in this instance litigation."[3]

The dispute that gave rise to this litigation arose more than 50 years after Meadowland embarked on its development. In 2007, defendants purchased Tax Lot 300 (originally deeded in 1978), and, in 2009, plaintiffs purchased Tax Lot 1000 (originally deeded in 1971). The properties are located outside Burns, in an area south of Highway 20 E, and both are large parcels (20 or 40 acres). The original deeds for both properties contain Meadowland's standard

---

[3] This is not the first time that property owners have looked to the courts to resolve road access disputes in the Meadowland development. *See Williams v. Harrsch*, 297 Or 1, 9, 681 P2d 119 (1984) (holding that the plaintiffs had failed to prove that they and the public had a prescriptive easement to use a certain road on land sold by Meadowland).

reservation provision quoted above. It is undisputed that both parties took title to their respective properties subject to that deed reservation.

The parties have not pointed us to any useful map in the trial court record, nor have we found one, so we must try to convey the lay of the land in words, based on the trial testimony. Both plaintiffs' and defendants' properties are located to the south of Highway 20 E. There is a "four-wheel drive quality" gravel road that turns south off Highway 20 E, which first runs down a property line shared by the Gosnells (to the west) and Actin Ranch (to the east); then runs through the eastern edge of plaintiffs' property (within 40 feet inside plaintiffs' eastern property line); then runs through property owned by the Tylers; then runs through property owned by the Hulls; then enters into tribal land that is located directly west of defendants' property. There is a driveway on defendants' property that connects to the gravel road.

The aforementioned road has existed since "as early as the 1980s, and perhaps sooner." The local Native American tribe and others have used it, including as recognized access to the tribal land mentioned above. However, the county does not recognize it as a road, and the county's road historian testified that no road has ever been identified there on historical surveys. Defendants claim to have used this road since 2007 to travel between Highway 20 E and their property, although there was conflicting evidence at trial, and the court did not make specific findings on that point. Defendants have alternative access to their property via better maintained roads, but they testified that the alternative routes are longer and less convenient than this road.

In 2019, plaintiffs brought this action to quiet title to their property and to enjoin defendants from using the portion of the aforementioned road that runs through their property, *i.e.*, the Road, which is the only portion of the aforementioned road that is at issue in this case. Defendants counterclaimed for declaratory relief, seeking a declaration that they have an easement to use the Road. At trial, plaintiffs argued that, because Meadowland never conveyed any

easement that it reserved, or exercised its right to dedicate a public road, defendants have no right to use the Road to drive across plaintiffs' property. In response, defendants relied primarily on the original 1971 deed for plaintiffs' property, in which Meadowland reserved "an easement of forty feet (40 feet) along all boundaries for public highway use in common with others," to argue that the general public has a right to use the Road, which includes defendants. Alternatively, defendants asserted a third-party beneficiary theory, argued for an implied public easement, and argued that Meadowland implicitly dedicated the Road for public use.[4]

After trial, the court found in plaintiffs' favor. It declared them to be the owners in fee simple of the property, free and clear of any claim or interest of defendants; precluded defendants from asserting any claim or interest in the property, "including without limitation a claim of easement, right-of-way, public way, or public road"; quieted title in plaintiffs' favor; and denied defendants' counterclaims. Defendants appeal.

## II.   DENIAL OF SUMMARY JUDGMENT

In their first assignment of error, defendants challenge the denial of their motion for summary judgment. We do not address the merits of that claim of error because a trial court's denial of summary judgment is generally unreviewable on appeal, with limited exceptions not applicable here.

Defendants contend that the exception for a motion that rests on "purely legal contentions" applies—*see York v. Bailey*, 159 Or App 341, 345, 976 P2d 1181, *rev den*, 329 Or 287 (1999) ("[A]n order denying summary judgment is not reviewable following a full trial on the merits, unless the motion rests on 'purely legal contentions' that do not require the establishment of any predicate facts.")—because their motion was based on "the text and context of deed

---

[4] Defendants did not claim a prescriptive easement. Nor have they asserted any application of claim preclusion, issue preclusion, or estoppel, despite including in their briefing on appeal several references to a 2006 county land use proceeding regarding their property and to certain 2014 statements by plaintiffs regarding the Road.

reservations" and other "undisputed facts." That argument conflates the summary judgment standard with the reviewability standard.

As explained in *York*, a motion rests on "purely legal contentions" when "the facts are not merely undisputed but immaterial, such as a facial challenge to the constitutionality of a statute." *Id*. (internal quotation marks omitted). "In other words, the legal theory underlying the motion must be that the moving party has a right to prevail on any set of facts and that the facts, in effect, do not matter." *Id*. at 345-46. Here, as in *York*, defendants' motion did not rest on purely legal contentions, but rather "turned on the significance of adjudicative facts (albeit facts that defendant asserted to be undisputed)." *Id*. at 346. "[T]he denial of a motion for summary judgment that is based on facts, even undisputed facts, is not reviewable." *Staten v. Steel*, 222 Or App 17, 26, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009). The trial court's denial of defendants' summary judgment motion is therefore unreviewable.

### III.   TRIAL VERDICT ON PLAINTIFFS' QUIET-TITLE CLAIM

In their second assignment of error, defendants claim that the trial court erred by quieting title in plaintiffs' favor after trial. Before turning to the merits, we pause to address the procedural posture of this case, as relevant to preservation. *See Harrison v. Hall*, 211 Or App 697, 701, 156 P3d 141, *rev den*, 343 Or 159 (2007) (we have an independent obligation to assess preservation).

In a bench trial, to preserve for appeal a contention that one was entitled to prevail as a matter of law on a particular claim, the party who does *not* bear the burden of persuasion on that claim must move for directed verdict (or the like), whereas the party with the burden of persuasion need not make such a motion. *Peiffer v. Hoyt*, 339 Or 649, 658, 125 P3d 734 (2005). Here, plaintiffs bore the burden of persuasion on their quiet-title claim, *Day v. Day*, 299 Or App 460, 468, 450 P3d 1 (2019), and defendants did not move for directed verdict on that claim, so defendants' assertion of an entitlement to prevail on the quiet-title claim would normally be considered unpreserved. However, defendants

brought a declaratory judgment counterclaim, and they bore the burden of persuasion as to the existence of an easement. *Eugene Water & Electric Board v. Miller*, 290 Or App 721, 733, 417 P3d 456 (2018) (in a declaratory judgment action, "the parties bear the same burden of production and persuasion that they would have in an ordinary action to enforce rights under an easement," *i.e.*, the party claiming an easement bears the burden to establish its existence). Applying the same principles animating *Peiffer*, we conclude that requiring defendants to have moved for directed verdict on plaintiffs' quiet title claim to preserve their second assignment of error would "not promote judicial efficiency or fairness to the parties." *Peiffer*, 339 Or at 658. We therefore conclude that no preservation problem exists, and we proceed to the merits of the second assignment.

On the merits, we are unpersuaded that the trial court committed legal error in quieting title in plaintiffs' favor. To explain why, we address each of the four points of the court's reasoning, which correspond to defendants' arguments for a right to use the Road: express easement for the public, third-party beneficiary of the deeds, implied public easement, and implied dedication of a public road.

First, we agree with the trial court that the express easement for public highways that Meadowland reserved in the original deed for plaintiffs' property was "an easement in gross, personal to Meadowland Ranches." *See Block v. DEA Properties-2 LLC*, 315 Or App 525, 530-31, 501 P3d 545 (2021) (unlike an easement appurtenant, an easement in gross is personal to the creator, does not run with the land, and, if it has commercial value, is transferrable separately from the land itself). In interpreting a deed, "[o]ur objective is to ascertain the meaning that most likely was intended by the parties who entered into it." *Connall v. Felton*, 225 Or App 266, 271, 201 P3d 219, *rev den*, 346 Or 257 (2009). "We look first to the language of the instrument itself and consider its text in the context of the document as a whole." *Id.* at 272. With respect to easements created by deed, "[t]here is an extremely strong constructional preference for the finding of an easement appurtenant rather than in gross[,]" unless the deed language is "sufficient to override that preference." *Hall v. Meyer*, 270 Or 335, 339, 527 P2d 722 (1974).

Here, the deed language is sufficient to override the constructional preference for an easement appurtenant. Meadowland's reservation of the "power to dedicate" points to an easement in gross, as there would be no need to reserve the power to dedicate if the deed itself effected a public easement over the outermost 40 feet of the entire perimeter. Even more telling is the concluding sentence of the reservation provision, in which Meadowland expressly reserved to itself "the *sole* right to convey the rights hereby reserved." (Emphasis added.) That is strongly indicative of an easement in gross personal to Meadowland. *Cf. Sunset Lake v. Remington*, 45 Or App 973, 976-77, 609 P2d 896 (1980) (concluding that the person who platted a town in 1907 had intended an easement in gross, where he reserved to himself and his "associates and assigns" the "exclusive right" to construct and operate utility infrastructure). The absence of any mention of neighboring parcels is also consistent with an easement in gross, *see Hall*, 270 Or at 339 (concluding that a deed created an easement appurtenant, not in gross, where it specifically referenced the grantor's dwelling, which indicated "the intent to create it as the dominant estate of an easement appurtenant"), although that aspect of the deed language is less significant here given the allegedly "public" nature of the easement.

Meadowland's intention to reserve an easement in gross, for its own benefit, is further supported by the circumstances under which the deeds were prepared,[5] *i.e.*, in

---

[5] When applying the "three steps" of contract interpretation described in *Yogman v. Parrott*, 325 Or 358, 361-65, 937 P2d 1019 (1997), it is important not to forget the clarification in *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 129 P3d 773, *rev den*, 341 Or 366 (2006) (synthesizing *Yogman* with *Abercrombie v. Hayden Corp.*, 320 Or 279, 883 P2d 845 (1994)). On its face, *Yogman* could be read to suggest that *no* extrinsic evidence can be considered at the first step of interpretation, but as explained in *Batzer*, that would be a misreading of *Yogman*. 204 Or App at 316-17. At the first step of interpretation, "the trial court can properly consider the text of the provision in the context of the agreement as a whole *and in light of the circumstances underlying the formation of the contract*." *Id.* at 317 (emphasis added); *see also* ORS 42.220 ("In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."). Thus, "[i]n determining whether a term in a deed is ambiguous," which is the first step of interpretation, "the court can consider evidence of the circumstances surrounding its execution." *James B. House Living Trust v. Thompson*, 230 Or App 595, 600, 217 P3d 228 (2009).

the context of Meadowland's larger development scheme for the area. That scheme ultimately did not come to fruition—insofar as Meadowland never recorded a subdivision plat, conveyed any easements, or formally dedicated any roads, before its administrative dissolution in 1982—but its existence informs what Meadowland intended when it reserved extensive easements and rights of way[6] on each parcel that it sold and retained "the sole right to convey" those rights. On the whole, the trial court did not err in interpreting the deed language as creating easement rights personal to Meadowland, to be used in furtherance of Meadowland's future development scheme, rather than granting immediate easement rights to the general public over a significant portion of the property.

In their reply brief, defendants seek to analogize their situation to that of the general public in *Cal-Neva Land & Timber Inc. v. United States*, 70 F Supp 2d 1151, 1155-56, 1159 (D Or 1999), wherein the Bureau of Land Management (BLM) had been granted a "perpetual easement and right-of-way" over private land "for the full use as a roadway by [BLM], its licensees and permittees," and the federal district court concluded that BLM was not wrong to interpret "licensees and permittees" to include the public, if BLM chose to allow the public to use the easement. The situations are not analogous, and we find no persuasive support in that case for defendants' argument.

Second, we agree with the trial court's rejection of defendants' "third party beneficiary" theory. *See Sisters of St. Joseph v. Russell*, 318 Or 370, 374-75, 867 P2d 1377 (1994) (discussing Oregon law on third-party beneficiaries). Defendants argue that they and other "lot owners like situated" are "intended third-party beneficiaries of the easements reserved in both parties' deeds." They argue that the deeds contain an "implied promise" to people buying property in the Meadowland subdivision "that the lots they were buying were benefited by the easements that Meadowland

---

[6] A right-of-way is a type of easement. *Cappelli v. Justice*, 262 Or 120, 128-29, 496 P2d 209 (1972) (absent special circumstances indicating a contrary meaning, courts have generally construed "right of way" to signify an easement, as that is the common usage).

Ranches reserved in each deed." That theory is essentially a hybrid of defendants' arguments for an express or implied easement, but with a specific focus on Meadowland property owners. We have already addressed why the deeds do not create an express easement for the public—but rather an easement in gross personal to Meadowland for use in possible future road dedication—and we will address shortly why no implied public easement exists.

Defendants have not made a viable argument for an easement based on third-party beneficiary status independent of the existence of an express or implied public easement. The only case that they cite as substantive support for their third-party beneficiary argument is *Vale Dean Canyon Homeowners Assoc. v. Dean*, 100 Or App 158, 785 P2d 772 (1990), which is readily distinguishable. In that case, we concluded that there was sufficient evidence to survive summary judgment as to whether the plaintiffs—who had purchased a lot in a platted subdivision—were intended third-party beneficiaries of a 1981 contract between the developer and the county, in which the developer promised to build roads in the subdivision. *Id*. at 160. That contract had been required as a condition of plat approval, and the developer failed to honor it, forcing the lot owners to incur their own costs to build roads. *Id*. at 160-61. The plaintiffs sought to recover damages from the developer for those costs. *Id*. at 161. The situation here is not comparable. Defendants are relying on the deeds themselves, which are already the subject of their arguments for an express or implied easement.

Third, relying on the trial court's express and implied factual findings, we conclude that the court did not err in rejecting defendants' assertion of a public easement by implication.[7] "'Implied easements are disfavored and must be established by clear and convincing evidence. The provisions of an instrument relied upon to create an implied easement are to be strictly construed, with any doubt being resolved in favor of the free use of the land.'" *Dayton v.*

---

[7] The doctrine of implied *dedication* is the usual means to claim a right to public use of private property. For purposes of this appeal, however, we assume, without deciding that an implied *easement* for the general public is also possible, as neither party has significantly briefed that issue.

*Jordan*, 279 Or App 737, 750, 381 P3d 1031 (2016) (*Dayton I*) (quoting *Bloomfield v. Weakland*, 193 Or App 784, 795-96, 92 P3d 749 (2004), *aff'd on other grounds*, 339 Or 504, 123 P3d 275 (2005)).

An implied easement may be inferred only if the claimant proves by clear and convincing evidence that, although the grantor failed to expressly convey an easement, the grantor intended to create an easement, as evinced by the circumstances at the time that the parcel was severed or conveyed. *Dayton v. Jordan*, 280 Or App 236, 241, 381 P3d 1041 (2016) (*Dayton II*). For example, in *Garrett v. Mueller*, 144 Or App 330, 341, 927 P2d 612 (1996), *rev den*, 324 Or 560 (1997), the plaintiffs proved an implied easement to take water from a spring on adjacent property, where the properties were previously a single parcel, there was 50 years of prior use, the wells on the plaintiffs' property were completely inadequate, the grantors knew how important the spring water was to the plaintiffs when they sold the property, and one of the grantors had promised to provide an express easement but failed to follow through.

"'The determination of the existence of an implied easement is inherently factual and involves a weighing of numerous factors.'" *Dayton I*, 279 Or App at 750 (quoting *Bloomfield*, 193 Or App at 795-96). Those factors include: (1) whether the claimant is the conveyor or the conveyee; (2) the terms of the conveyance; (3) the consideration given for the conveyance; (4) whether the claim is made against a simultaneous conveyee; (5) the extent of the claimant's need for the easement; (6) whether there are reciprocal benefits to the conveyor and the conveyee; (7) the manner in which the land was used prior to its conveyance; and (8) the extent to which the prior use was or might have been known to the parties. *Dayton II*, 280 Or App at 242; *see also Thompson v. Schuh*, 286 Or 201, 212, 593 P2d 1138 (1979) (discussing each factor). No one factor is controlling. *Dayton II*, 280 Or App at 245. Ultimately, "the essential question is whether a reasonable purchaser would expect the easement under the circumstances in which he or she purchased the land." *Eagles Five, LLC v. Lawton*, 250 Or App 413, 424, 280 P3d 1017 (2012) (internal quotation marks omitted).

Defendants do not address the foregoing factors directly. Instead, they argue in general terms that the deed language, either alone or in conjunction with the 1963 map, shows that Meadowland "clearly" intended the properties in its subdivision "to have access via the 40-foot-wide access easements for public highway use" and, thus, conclusively establishes a public easement by implication.[8]

We disagree with defendants that the trial court was required to find on these facts that an implied easement exists over the outermost 40 feet of plaintiffs' entire property, including the Road, for use by the general public, including defendants. The trial court focused on two factors in particular (which is consistent with how the implied-easement issue was argued below): the deed language, and the existence of alternative access to defendants' property. The deed language—that is, the terms of the conveyance, *Dayton II*, 280 Or App at 242 (second factor)—does not support the existence of an implied easement. As we have explained, the deed language was intended to create an easement in gross, personal to Meadowland. That conclusion forecloses the possibility that, as defendants contend, Meadowland actually intended, and defendants' predecessors reasonably would have understood, the same deed language to create a public easement by implication in exactly the same location and for essentially the same purpose.

As for the existence of alternative access to defendant's property—which goes to the extent of the claimant's need for the easement, *id.* (fifth factor)—defendants failed to prove that their predecessor needed the easement. The court expressly found that there are alternative routes to defendants' property, which is supported by defendants' own trial testimony. Defendants largely ignore that finding, leaving little further to discuss. If defendants' predecessor lacked legal access to the property—which, as the trial court expressly recognized, a reasonable buyer would have

---

[8] Defendants also refer to their own expectations before purchasing their property in 2007. However, the relevant issue is the reasonable expectations of defendants' predecessor in 1978, not what defendants believed or expected in 2007. *See Eagles Five*, 250 Or App at 424-25 (reviewing evidence of the parties' intent in 1988, when the property was severed and conveyed, as the "central issue" on an implied easement claim).

expected to have[9]—defendants failed to prove that fact and, accordingly, failed to prove the need for the easement as a factor in their favor.[10]

Defendants have not identified any other factors as weighing in favor of an implied easement, but we have reviewed all of the factors. Ultimately, we cannot say that the trial court was required to find an implied easement on this record.

Fourth, the trial court did not err in rejecting defendants' argument that Meadowland implicitly dedicated the land where the Road is located as a public road. A dedication occurs when a property owner appropriates land for public use. *Mid-Valley Resources v. Foxglove Properties*, 280 Or App 784, 789, 381 P3d 910 (2016). "For example, a private property owner may dedicate land to be used as a public roadway." *Dayton I*, 279 Or App at 746. Common-law dedication is based on principles of equitable estoppel, may be express or implied, and "typically arises when members of the public rely on a property owner's representations that land has been opened up for public use." *Id.*

"In order to prevail on a theory of implied dedication defendant must prove that the owner intended 'to devote his property to a public use, and this intention must be clearly and unequivocally manifested by his acts.'" *Muzzy v. Wilson*, 259 Or 512, 518, 487 P2d 875 (1971) (quoting *Harris v. City of St. Helens*, 72 Or 377, 388, 143 P 941 (1914)). Such acts

---

[9] Early in its opinion, the trial court noted that people who bought property from Meadowland would have expected "legal access" to their property, while also noting that they presumably would not have expected "to give up 40' easements around the entire perimeter of their property—almost 20% of a 40-acre parcel."

[10] Relatedly, defendants failed to prove prior use, by their predecessor or the general public. *See Dayton II*, 280 Or App at 242 (seventh and eighth factors relate to prior use); *id.* at 247 (although it is possible to prove an implied easement without evidence of prior use, "evidence of prior use is highly relevant"). The court expressly declined to find that the Road even existed in the 1970s, noting that the only evidence that it did was the 1963 map, which shows a gravel road where the Road is located, but which the court viewed as unreliable. Defendants argue that it is irrelevant whether the Road existed, "because the easements reserved by Meadowlands exist with or without a road." It is true that whether the Road existed in the 1970s is not important to defendants' arguments, as defendants have framed them—defendants essentially treat the Road as no different from the rest of the outermost 40-foot perimeter of plaintiffs' property.

must be "open and known" in nature and "of such a character as to induce the belief that [the owner] intended to dedicate the way to public use." *Id*. at 519. If "the public and individuals act upon such conduct, and proceed as if in fact there had been a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, then the law would not permit [the owner] to assert that there was no intent to dedicate, no matter what may have been [the owner's] secret intent." *Id*. (internal quotation marks omitted).

Defendants argue that it is reasonably inferable from the deed language, along with the 1963 map, that Meadowland intended to dedicate the Road for public use. Although this may be defendants' strongest argument, the trial court did not err in finding otherwise. "The burden to establish an implied common law dedication is a heavy one." *Mid-Valley Resources*, 280 Or App at 792; *see also id*. at 794 n 3 (recognizing "the enduring line of authority specifying that a dedication for public use is not presumed," and citing cases). Meadowland reserved an easement in gross for itself, expressly retaining the "power to dedicate" and "the sole right to convey" the reserved rights. That deed language strongly suggests that Meadowland contemplated dedicating appropriate roads in the future, as part of its development plan, but had not decided where to put them and wanted to leave its options open. It does not clearly and unequivocally manifest an intention to dedicate the entire outer 40 feet of each subdivided parcel as public roads.

The 1963 map does not change that conclusion. Meadowland never recorded a plat, and the deeds by which it conveyed the subdivided parcels contain no reference to the 1963 map or any other map. If either of those things were different, it might change the result. *See Dayton I*, 279 Or App at 747-48 (recognizing that a public-use designation on a recorded plat, or a public-use designation on a plat or map that is expressly referenced in a deed, is strong evidence that the platter intended to make a public dedication, albeit not necessarily dispositive). But the fact is no plat showing public roads was recorded, and the deeds do not reference any map showing public roads. The existence of one unrecorded map in the county's file is inadequate to establish

that Meadowland engaged in "open and known" acts of public dedication of the type that would give rise to an implied dedication—which, as mentioned, sounds in principles of equitable estoppel between the landowner and the general public. *See Muzzy*, 259 Or at 519. The trial court did not err in rejecting defendants' implied dedication argument.[11]

In sum, the trial court did not err in quieting title in plaintiffs' favor. We therefore affirm the general judgment.

Affirmed.

---

[11] Because we agree with the trial court's first basis for rejecting defendants' implied-dedication argument, we do not address its alternative bases, which related to (1) the expectations of purchasers to whom Meadowland sold multiple adjoining parcels for commercial use, and (2) the lack of evidence that the general public believed the Road to be public. *See Muzzy*, 259 Or at 522 (use of property by neighbors does not equate to general public use).