470 September 17, 2025 No. 818

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Andrew POLLACK,
an individual,
and Julie Phillips, an individual,
on behalf of Sunnybrook West, LLC,
an Oregon limited liability company,
*Plaintiffs-Respondents,*

*v.*

Keith MAPES,
an individual,
and Meagan Mapes, an individual,
*Defendants-Appellants.*

Keith MAPES,
an individual,
and Meagan Mapes, an individual,
*Counterclaim Plaintiffs-Appellants,*

*v.*

Andrew POLLACK,
an individual,
and Julie Phillips, an individual,
on behalf of Sunnybrook West, LLC,
an Oregon limited liability company,
*Counterclaim Defendants-Respondents.*

Jackson County Circuit Court
21CV15076; A181004

David G. Hoppe, Judge.

Argued and submitted December 4, 2024.

Carlette A. Kruse argued the cause for appellants. Also on the briefs were David B. Paradis and Brophy Schmor, LLP.

Erik J. Glatte argued the cause for respondents. Also on the brief was Jarvis Glatte Bunick, LLP.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Reversed and remanded.

Egan, J., concurring.

**AOYAGI, P. J.**

The parties are neighboring landowners in Eagle Point. Plaintiffs own approximately 700 acres, and defendants own approximately 170 acres. Both purchased their properties in 2019, and the first survey of record was done in 2021. The present dispute involves an irregular strip of land between an ancient fence line on defendants' property and the deeded property line, which lies north of the fence line. Given the half-mile-long boundary, the disputed area totals over 2.6 acres. Plaintiffs claim title by adverse possession. The matter was tried, and the trial court found in plaintiffs' favor, concluding that plaintiffs' predecessors acquired the disputed property in 1980. Defendants appeal, raising three assignments of error. As explained below, we agree with defendants that the evidence was legally insufficient to establish adverse possession for the period 1970 to 1980 and therefore reverse the judgment for plaintiffs and remand for further proceedings as to later time periods. We reject the second assignment of error on procedural grounds and need not reach the third assignment of error.

*Adverse possession.* In their first assignment of error, defendants argue that plaintiffs' evidence was "vague, confusing, speculative, and insufficient as a matter of law to establish adverse possession by clear and convincing evidence." That claim of error is preserved, because defendants argued in their written closing argument that the evidence was legally insufficient. *Farnsworth v. Meadowland Ranches, Inc.*, 321 Or App 814, 820, 519 P3d 153 (2022); *T. L. A. v. Vierra*, 295 Or App 576, 577-78, 435 P3d 826, *rev den*, 364 Or 723 (2019). Because defendants challenge the sufficiency of the evidence, the standard of review is the same as for a directed verdict: "Our task is not to weigh the evidence or to assess witness credibility" but, instead, to view the evidence in the light most favorable to plaintiffs and determine whether it was legally insufficient to prove their claim.[1] *Kelley v. Washington County*, 303 Or App 20, 21,

---

[1] Because we understand defendants to challenge the legal sufficiency of the evidence, we decline their request for limited *de novo* review on a single fact, as factual findings are irrelevant to a legal sufficiency analysis. *See Dept. of Human Services v. A. R. S.*, 256 Or App 653, 656, 303 P3d 963, *rev den*, 354 Or 386 (2013) (declining *de novo* review because the issue on appeal was purely legal).

463 P3d 36 (2020); *see also Tiedemann v. Radiation Therapy Consultants*, 299 Or 238, 244-45, 701 P2d 440 (1985) ("A directed verdict for a defendant results when a plaintiff fails to meet its burden of proof on an issue of fact."); *Warren v. Burnham*, 341 Or App 226, 227, 573 P3d 421 (2025) (recognizing that ORCP 54 B allows for testing the sufficiency of the evidence in nonjury cases).

The disputed property lies between an ancient fence line on defendants' property and the deeded property line, as shown in shading below.



The distance between the two lines varies, ranging from 14 to 80 feet.

Plaintiffs' complaint suggested an adverse possession vesting period of 1994 to 2004, which would make their claim subject to the statutory requirements for adverse possession in ORS 105.620 (applicable to claims vesting after January 1, 1990). However, plaintiffs asserted in their trial memorandum and sought to prove at trial an earlier vesting period, and the specific issue on appeal pertains to a vesting date of 1980. The common-law requirements for adverse possession therefore apply.

To prevail on a common-law adverse possession claim, plaintiffs had to prove actual, open, notorious, exclusive,

hostile, and continuous use of the disputed land for 10 years. *Wood v. Taylor*, 307 Or App 688, 695, 479 P3d 560 (2020), *rev den*, 368 Or 37 (2021). Here, viewing the evidence in the light most favorable to plaintiffs, we conclude that it was legally insufficient to prove hostility in the period 1970 to 1980, when plaintiffs' predecessor Ernest Hostutler owned what is now plaintiffs' property.

Hostility "means that the claimant possessed the property intending to be its owner and not in subordination to the true owner." *Faulconer v. Williams*, 327 Or 381, 389, 964 P2d 246 (1998). It may be proved in either of two ways. *Id*. As applied here, to prove hostility in the period 1970 to 1980, plaintiffs had to prove either that Hostutler subjectively intended to possess the disputed strip as its true owner or that Hostutler believed by pure mistake that he owned the disputed strip. *Id*.

Hostutler died in 1989, more than 30 years before any dispute about the property line arose, and there is no evidence of his ever telling anyone where he believed the property line to be, so plaintiffs relied on circumstantial evidence to try to prove his hostility. The trial evidence showed:

- The ancient fence is very old and includes materials that are no longer available. It is unknown when it was built. It is unknown who built it.

- The ancient fence runs between a rock column located about 30 feet from the one-sixteenth section corner and a cedar tree located 41 feet from the section line. Shawn Kampmann, a licensed land surveyor hired by plaintiffs, testified that whoever built the rock pillar presumably thought it was the section corner, that whoever built the fence "appeared to try to put it in a straight line," and that the relatively straight line led him to "presume" that "the intent was that it was a boundary fence of some sort."

- In 1938, Hostutler bought what is now plaintiffs' property. He lived there from 1951 until 1977, when he moved to his sister's house down the road. Nancy Lilly and her husband moved onto the property in

1977 and stayed until 1992. They inherited the property when Hostutler died in 1989.

- There is a long history of cattle ranching on both properties. In the period 1970 to 1977, Hostutler ran about 30 head of cattle, for part of every year, and the Lillys continued that practice from 1977 to 1980. Nothing prevented Hostutler's cattle from roaming up to the ancient fence line, and they did so.

- In the period from 1970 to 1980, both Hostutler and defendants' predecessors mended the ancient fence to keep the cattle in.

That evidence was legally insufficient to prove the hostility element of adverse possession for the period 1970 to 1980. "Hostility may not be presumed from the fact that the disputed property was used openly and continuously for the requisite ten-year period." *Harrell v. Tilley*, 201 Or App 464, 474, 119 P3d 251 (2005). "In the absence of affirmative proof of either 'pure mistake' or subjective intent to possess, Oregon law presumes that even open, notorious, continuous, and exclusive possession is still subservient—and therefore not adverse—to the legal title." *Id*.

Here, there is no evidence as to when the ancient fence was built or who built it. It could have been built by Hostutler, a predecessor of Hostutler, or a predecessor of defendants—it is simply unknown. Absent any evidence that Hostutler himself built the fence as a boundary fence, to prove hostility by Hostutler would require some evidence that Hostutler believed the ancient fence line to establish a boundary and treated it as a property line. But there is no such evidence. There is no evidence that Hostutler was told or led to believe when he bought the property that the ancient fence demarcated the property line. *See Nooteboom v. Bulson*, 153 Or App 361, 364, 956 P2d 1042, *rev den*, 327 Or 431 (1998) ("When defendants acquired their interest in the property in 1947, defendant Eugene Bulson walked the fence line with his grandfather and understood from doing so that the fence marked the property's boundary."). There is no evidence that Hostutler knew who built the fence or for what purpose. And there is no evidence that Hostutler himself viewed and

treated the fence as a boundary fence, versus a convenience fence to manage cattle. *See Whitley v. Jacobs*, 278 Or 541, 548, 564 P2d 1057 (1977) (distinguishing between a "convenience fence" used to assist in the management of grazing cattle and a "boundary fence" used to mark a boundary line). In sum, there is no evidence that Hostutler subjectively intended to take ownership of his neighbor's land or that he mistakenly believed that he in fact owned it.

To the extent that plaintiffs rely on Kampmann's testimony regarding the intent of the original fence builder to argue that the evidence was legally sufficient to establish Hostutler's hostility, we find that argument unpersuasive. Absent some evidence that Hostutler was the original fence builder, or that he was told or divined the original fence builder's intent and himself treated the fence as a boundary line, the intent of the original fence builder is irrelevant in and of itself.

The mere fact that Hostutler maintained the fence to some degree also is not enough to establish hostility, as maintaining the fence while running cattle is equally consistent with it being a convenience fence. *See Hoffman v. Freeman Land and Timber, LLC*, 329 Or 554, 564, 994 P2d 106 (1999) (evidence did not establish intent to own where it was "equally consistent with use of the property as a convenience"); *Morris v. Kanne*, 295 Or App 726, 733-34, 436 P3d 36, *rev den*, 365 Or 195 (2019) (holding that evidence was legally insufficient to establish hostility for purposes of adverse possession, including evidence that the claimant had maintained and replaced a fence, where "the fence's original construction predated the parties' ownership of their respective parcels").

Because the evidence was legally insufficient to prove hostility for the period from 1970 to 1980, when Hostutler owned what is now plaintiffs' property, it was necessarily insufficient to establish transfer of title by adverse possession in 1980. The trial court has not yet addressed any other time periods, nor has defendant developed any argument on appeal as to the sufficiency of the evidence

for any other time periods. We therefore leave it to the trial court to consider other potential vesting periods on remand.

*Kampmann testimony.* In their second assignment of error, defendants argue that the trial court erred "in relying on plaintiffs' surveyor testimony that the builder of the fence intended to build a boundary line." We reject that claim of error on procedural grounds. Defendant did not separately object to that testimony in the trial court, instead relying on an earlier "speculation" objection to testimony about fence maintenance that the court said would be a "standing" objection. It is unclear what the nature of any implied objection to the later testimony was—that Kampmann lacked the necessary expert qualifications to opine on the issue, that Kampmann was qualified to opine but lacked an adequate factual foundation, or that the issue was not a proper subject of expert testimony. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (purposes of preservation); *State v. Taylor*, 323 Or App 422, 427 n 3, 523 P3d 696 (2022) ("[W]e have an independent obligation to assess preservation, regardless of what position the parties take."). Further, on appeal, defendants conflate the evidentiary ruling itself with a potential error in how the court later relied on the evidence, and they also do not develop a meaningful argument on speculativeness until the reply brief. We therefore reject the second assignment of error without reaching the merits, except to note that we have already explained the limited relevance of Kampmann's testimony regarding the intent of the original fence builder. *See* 343 Or App at 475-76.

*Counterclaim.* In their third assignment of error, defendants raise a claim of error regarding their ejectment counterclaim. We need not reach that issue, because the trial court relied on its adverse possession ruling to dispose of all of the other claims and counterclaims in the case, as its opinion letter makes clear. Given our disposition, the other claims and counterclaims will necessarily have to be revisited on remand.

*Conclusion.* For the reasons described, we reverse the judgment in favor of plaintiffs, and we remand for further proceedings consistent with this opinion.

Reversed and remanded.

**EGAN, J.,** concurring.

I agree with the impeccable reasoning of the majority opinion regarding the first and third assignments of error, and with the legally correct outcome of the majority decision. I do not agree with the majority's reasoning regarding the second assignment of error, and I write separately to explain why the expert testimony was speculative in this case and how that speculative testimony substantially affected the rights of defendant.

At trial, plaintiffs presented testimony from Shawn Kampmann. Kampmann is a licensed land surveyor in Oregon who was hired by plaintiffs to survey the location of the fence line. The court recognized Kampmann as an expert in *land surveying*. Kampmann described the map that he made for plaintiffs' property, surveying the location of the deeded property line and the fence line. The map was entered as Exhibit 10, as illustrated above in the text of the majority opinion.

Kampmann proceeded to testify that the fence was very old and had somewhat been maintained over the years. At that point, defendants objected to his testimony as speculative. The court overruled defendants' objection, but it granted defendants a "continuing objection." In context, we understand the court to have granted a continuing objection for any of Kampmann's testimony that would be speculative, *i.e.*, going beyond admissible expert opinion testimony. Both parties agree that defendants adequately preserved their argument that they make on appeal, and it is difficult to see how any of the issues beyond Kampmann's expert opinion on the position of the fence as it related to the actual property line are not preserved.

Kampmann testified that whoever built the fence "appeared to try to put it in a straight line" and that led him to "presume" that "the intent was that it was a boundary fence of sort."

On appeal, defendants argue that the trial court erred in admitting Kampmann's testimony that the builder of the fence intended to build a boundary fence. Defendants argue that the testimony was inadmissible because it

constituted speculation, and that the testimony was not harmless because the testimony was the only proof that the use of the property was hostile from 1970 to 1980. I agree— the majority appears to disagree.

The trial court ruled that Kampmann's testimony was not speculative. In my view, we should review evidentiary rulings of this type for errors of law. *ODOT v. Alderwoods (Oregon), Inc.*, 358 Or 501, 517-18, 366 P3d 316 (2015). A witness qualified as an expert may testify in the form of an opinion if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." OEC 702. However, "[c]onjectures, speculations and guesses are not admissible." *Spicer v. Benefit Ass'n of Ry. Emp.*, 142 Or 574, 586, 21 P2d 187 (1933). An expert witness's opinion is inadmissible if it "requires the stacking of inferences to the point of speculation." *State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004); *McKay v. State Ind. Acc. Com.*, 161 Or 191, 198-99, 87 P2d 202 (1939) (concluding that an expert's opinion was impermissibly speculative because "an inference may not be based on an inference"); *see also Vale v. State Ind. Acc. Com.*, 160 Or 569, 576-77, 86 P2d 956 (1939) (an expert's opinion is inadmissible "when the essential facts are left to speculation").

In this case, I would conclude that Kampmann's opinion that the builder of the fence intended the fence to mark the boundary line was impermissibly speculative because it requires too many stackings of inferences. Kampmann was recognized by the court as an expert in *land surveying*. The primary purpose of a survey is to determine the location of boundaries or other landmarks in a property. *See* ORS 672.005(2)(d) (defining the "[p]ractice of land surveying" to include "[l]ocating, relocating, establishing, reestablishing or retracing any property lines or boundaries for any tract of land"). Kampmann, therefore, could certainly testify to the location of the fence line and its condition. He could also testify, as he did, to what features of a fence make it more likely to be a boundary fence rather than a fence of convenience. But Kampmann's testimony crossed the line into speculation when he testified that the builder of the fence—whose identity is unknown—intended the fence

to mark the boundary line. That conclusion stacked too many inferences, and therefore was impermissibly speculative. *See Vale*, 160 Or at 577 (an expert cannot testify to an opinion "when the essential facts are left to speculation"). Therefore, the trial court erred in allowing Kampmann to testify to the intent of the fence builder as the testimony was impermissibly speculative.

I next assess whether the error was harmless. "An evidentiary error is reversible only if it substantially affects a party's rights." *Dew v. Bay Area Health Dist.*, 248 Or App 244, 256, 278 P3d 20 (2012). An error substantially affects a party's right and requires reversal "when the error has some likelihood of affecting the verdict." *Id*. at 258. Here, the trial court relied on Kampmann's testimony in reaching its verdict. Accordingly, I would conclude that the admission of Kampmann's testimony on the intent of the fence builder was not harmless.

For all of these reasons, I diverge from the majority's reasoning on the issue of expert testimony while I concur with its reasoning with regard to the first and third assignments of error, and with regard to the outcome in this case.